**Richmond**

CURTIS DARNELL HILLIARD

V.

COMMONWEALTH OF VIRGINIA

No. 0162-92-2

Decided September 7,1993

COUNSEL

John B. Boatwright, III (Boatwright & Linka, on briefs), for appellant.

Donald R. Curry, Senior Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**— On appeal from his conviction of possession of cocaine with intent to distribute and possession of heroin, Curtis Darnell Hilliard contends that the trial court erred in denying his motion to suppress evidence discovered upon a pat down of his person. We find no error and affirm the judgment of the trial court.

In the early morning hours of September 6, 1991, police officers Riani, Von Cannon, and Vinutti went to Town Motel on Route 1 to execute drug search warrants for rooms 4 and 30. The officers had obtained the warrants after receiving information that a specific Lincoln Continental and a particular person from New York were involved in drug activity in those rooms. When the police arrived at the motel, they saw the Lincoln parked in front of room 14 and observed Hilliard standing in the open doorway of room 14. A man and a woman entered the Lincoln. As the car pulled away, Hilliard returned to the room and closed the door. After stopping the Lincoln and finding contraband and a revolver inside it, the officers arrested its occupants.

Meanwhile, the door to room 14 opened again, and a man appeared in the doorway staring at the activity around the Lincoln. When the man withdrew into the room, the officers decided to investigate whether there was a connection between the Lincoln's occupants and room 14. After they knocked on the door, Hilliard opened it. Riani asked Hilliard to step outside and talk to him. Hilliard agreed. At Riani's request, another man stepped outside also. Hilliard stated that the room was registered in his name and that he did not know the people in the Lincoln.

Riani told Hilliard that the people in the Lincoln had been charged with a drug violation and he asked whether any drugs were in the room. Hilliard said there were none. Riani asked permission to search the room. Hilliard agreed. While Riani searched the room, Von Cannon told Hilliard and the other man to put their hands on the wall "until [the police] could find out what was going on." When they as-

sumed this position, Von Cannon patted them down. Finding neither weapons nor suspicious objects on either man, Von Cannon told them to relax.

As Hilliard turned from the wall, a "Lifesaver Holes" plastic container fell onto the sidewalk from inside his right pants leg. Officer Vinutti picked it up. Because the container was clear, Vinutti immediately saw tin foil packets and numerous "zip-lock" bags containing white rocks. Laboratory tests determined that the foil packets contained heroin and the "zip-lock" bags contained cocaine. Hilliard told the officers that he had purchased the cocaine from a man in the motel and that he intended to sell some of it in order to pay the man. He said that the heroin was for his personal use.

Riani's search of room 14 produced no drugs.

At the suppression hearing, the trial judge found that "the time of day, the Lincoln and its proximity to Room 14, the door [to the room] reopening after the car was stopped, the finding of the weapon in the Lincoln, and [the fact] that there was drug activity in the area of the motel" justified the stop and frisk. Hilliard contends that this holding violated his Fourth Amendment rights, and that the trial court erred in denying his motion to suppress evidence produced by an illegal search. He argues that the police officers had no reasonable suspicion that he was engaged in criminal activity or posed a danger and no lawful basis for the pat down of his person.

■ The Fourth Amendment guarantees all citizens the right to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." *Terry v. Ohio,* 392 U.S. 1, 8 (1968). However in *Terry,* the Supreme Court held that a police officer, upon observing suspicious behavior suggesting in his experience that criminal activity may be afoot, may detain a person for inquiry and conduct a limited search for weapons to afford the officer proper protection. *Id.* at 27, 30-31.

■ Hilliard consented to the search of his room and voluntarily stepped outside to talk with the officers. He did not consent to being placed against the wall and frisked. However, the circumstances justified this detention and limited pat down. The hour, the activity around room 14, the presence of the Lincoln in front of room 14, Hilliard's presence in the open door of room 14 as the man and woman entered the Lincoln and his return into the room and closure of the door upon their departure, the discovery of contraband and a weapon in the

Lincoln, and the interest shown by room 14's occupants in the stopping and searching of the Lincoln, gave the officers reasonable grounds to suspect that the occupants of room 14 might be associated with the occupants of the Lincoln and the related criminal activity and might present a risk to the officers' safety. *See Harmon v. Commonwealth,* 15 Va. App. 440, 444-45, 425 S.E.2d 77, 79-80 (1992). Suspicion of illegal drug possession and distribution is a circumstance which gives rise to an inference of dangerousness. *Williams v. Commonwealth,* 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987). Therefore, the limited pat down search for weapons was proper. *Terry,* 392 U.S. at 29-31; *see Harris v. Commonwealth,* 241 Va. 146, 400 S.E.2d 191 (1991) (the safety of the officer when conducting his duties is of paramount importance).

■ The "Lifesaver Holes" container came lawfully into the plain view of Officer Vinutti and falls within the plain view exception to the warrant requirement articulated in *Coolidge v. New Hampshire,* 403 U.S. 443 (1971). Two requirements justify the plain view exception. "First, the 'initial intrusion' of the police officer must be lawful or he must otherwise properly be in a position from which he can view the location of the seizure. [Second], it must be 'immediately apparent' to the police officer that the item he observes may be evidence of a crime, contraband, or otherwise subject to seizure." *Ruffin v. Commonwealth,* 13 Va. App. 206, 208, 409 S.E.2d 177, 178-79 (1991) (citations omitted); *see also Horton v. California,* 496 U.S. 128, 135-36 (1990).

We have already determined the lawfulness of the officers' discovery of the "Lifesaver Holes" container. The second requirement of *Ruffin* has also been met. Officer Vinutti picked up the clear container and immediately saw foil packets on top of "baggies" filled with a white substance. Clearly this satisfies the "immediately apparent" requirement. The officer, relying on his common sense and his law enforcement experience, reasonably perceived that the substances, visible through the clear container, were contraband. *Harris,* 241 Va. at 153, 400 S.E.2d at 195.

For these reasons, we affirm the trial court's decision.

*Affirmed.*

Coleman, J., and Elder J., concurred.