COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Alexandria, Virginia

SEAN WILLIAM MORRIS

                                  MEMORANDUM OPINION[*] BY
v.   Record No. 2220-97-4      JUDGE ROSEMARIE ANNUNZIATA
                                    NOVEMBER 17, 1998
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

Bonnie H. Hoffman, Assistant Public Defender
(Office of the Public Defender, on briefs),
for appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.

Sean William Morris ("appellant") appeals his conviction by bench trial of possessing burglarious tools with the intent to commit larceny in violation of Code § 18.2-94. On appeal, appellant contends that the police illegally detained and searched him without satisfying the constitutional prerequisites for doing so. Appellant also argues the police illegally obtained his statements without informing him of his constitutional rights. We disagree and affirm appellant's conviction.

Under familiar principles, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below,

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

and grant all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). The trial court's findings will not be disturbed unless plainly wrong, id., and the appellant carries the burden to show reversible error. Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990). Bearing this in mind, we set forth the relevant facts below.

At approximately 1:07 a.m. on October 24, 1996, Loudoun County Sheriff's Department Deputies, Jeffrey Lockhart, Allen Gabrielli, and Christopher Bailey, responded to a dispatch that two individuals, on foot, were suspected of auto tampering in a residential townhome area. Each deputy wore his uniform and badge of authority. A few minutes after receiving the dispatch, Lockhart arrived on the scene and spoke with Chris Nowak, the person who had reported the incident. Nowak reported that, as he was leaving his house, he saw someone crouched behind a vehicle in the parking lot. After yelling out that he would call the police, Nowak saw a second person near another vehicle and heard one of the individuals yell, "Run." Both individuals ran toward a wooded area of the development and disappeared.

As Lockhart finished speaking with Nowak, Bailey arrived with his K-9, Caesar. Lockhart showed Bailey the area through which the suspects had fled. Using Caesar to track, Bailey found appellant hiding against the side of a house behind evergreen bushes. Bailey found appellant approximately 200 to 300 yards

from the spot where the suspects were last seen and within 5 to 6 minutes of giving chase from that point. Bailey ordered appellant to lie on the ground, placed him in handcuffs, and guarded him while waiting for back-up to arrive. Aware the second suspect might be nearby, Bailey swept the surrounding area with his flashlight and asked appellant where his friend had gone. Appellant responded by indicating the direction the other suspect went.

When Deputy Gabrielli arrived in his cruiser approximately one minute after Bailey's call for back-up, he helped appellant to his feet and brought him to the vehicle. On the way, Gabrielli asked, "What are you doing over here hiding in the bushes?" Appellant responded he had been walking back from a party. He also said that he was on the way to the store to get something to eat. Gabrielli informed appellant he was going to be detained, but that he was not under arrest at that time.

Before Gabrielli placed appellant inside his vehicle, the deputy asked whether he had any weapons on his person. Appellant stated he had a knife at his waist. Gabrielli found and removed the knife. Gabrielli then patted down the outside of appellant's clothing and found a flashlight, a pair of gloves, and a punch, a device with a three to four inch cylindrical handle containing a spring-loaded metal rod with a point on the end.

Gabrielli placed appellant inside his cruiser and continued to search the area with Bailey. The cruiser's doors were locked

from the outside and the windows closed.  Appellant remained inside the cruiser, handcuffed, for approximately thirty minutes, after which time the police released him.

I.  LAWFULNESS OF APPELLANT'S DETENTION

Appellant first contends that the police arrested him in violation of his Fourth and Fourteenth Amendment rights. Appellant argues that police actions during their investigative stop were so intrusive under the circumstances that they enlarged the scope of investigative activity into an arrest without probable cause.  We disagree.

While it is true that police procedures during a Terry stop can be so intrusive as to trigger the full protection of the Fourth and Fourteenth Amendments, Hayes v. Florida, 470 U.S. 811, 815-16 (1985), there is no "litmus-paper test for distinguishing . . . when a seizure exceeds the bounds of an investigative stop."  Florida v. Royer, 460 U.S. 491, 506 (1983).  Instead, when evaluating whether an investigative stop is unreasonable, common sense and ordinary human experience should take precedence over rigid criteria.  United States v. Sharpe, 470 U.S. 675, 685 (1985); DePriest v. Commonwealth, 4 Va. App. 577, 586, 359 S.E.2d 540, 544 (1987), cert. denied, 488 U.S. 985 (1988).  Although the "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time," the scope of the intrusion permitted will vary with each case.  Royer, 460 U.S. at 500.  As

- 4 -

such, even complete deprivations of a suspect's liberty "do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances." Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (citing United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)) (finding that a seizure was not the functional equivalent of an arrest despite the use of handcuffs and placement of defendant in a police cruiser when lone officer suspected defendant of recent, violent criminal activity and encountered him late at night), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

Here, as police obtained the challenged evidence prior to placing appellant in the cruiser, we limit our assessment of their actions to that period of time and find that the detention did not constitute an arrest. Responding to a call of possible auto tampering by two individuals shortly after 1:00 a.m., Deputy Bailey found appellant concealing himself behind shrubbery minutes after Caesar picked up his scent. Aware that there were two possible suspects involved, Bailey handcuffed and guarded appellant until other deputies arrived. Given the facts that appellant had apparently attempted to avoid police detection by concealing himself and was suspected of participating in recent criminal activity, Deputy Gabrielli asked appellant if he possessed any weapons and patted down his clothing after he responded in the affirmative. Under such circumstances, this

conduct was not so unreasonable or intrusive as to constitute an arrest.

II.  REASONABLENESS OF THE PAT-DOWN

We next address whether Deputy Gabrielli had reasonable suspicion to pat-down appellant's clothing during the investigative stop.  We hold that he did.

An officer may conduct a pat-down search of a suspect's outer clothing if the officer reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous.  Hilliard v. Commonwealth, 17 Va. App. 23, 25, 434 S.E.2d 911, 913 (1993).  In determining whether to conduct a pat-down, the officer is "entitled to rely upon 'the totality of the circumstances--the whole picture.'"  Pequese v. Commonwealth, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (citations omitted).  The officer does not have to be absolutely certain that a suspect is armed so long as "a reasonably prudent man in the [same] circumstances would be warranted in the belief that his safety or that of others [is] in danger."  Terry v. Ohio, 392 U.S. 1, 27 (1968); Lansdown v. Commonwealth, 226 Va. 204, 211, 308 S.E.2d 106, 111 (1983), cert. denied, 465 U.S. 1104 (1984).

> "Among the circumstances to be considered in connection with this issue are the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."  To this, we add the character of the offense which the individual is suspected of committing as a circumstance which the officer may consider.

Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 85

(citations omitted).

Here, the investigative stop occurred late at night following a report of two suspects lurking in a parking lot where earlier incidents of auto tampering had occurred. Based on his suspicion that appellant was involved in auto tampering, Gabrielli had reason to believe that he might be in possession of instruments that could be used as weapons. See Nelson v. Commonwealth, 24 Va. App. 823, 827, 485 S.E.2d 673, 674-75 (1997) (holding that it is not unreasonable for an officer to conduct a pat-down search when burglary is the crime for which the suspect is lawfully detained). Furthermore, by concealing himself behind bushes, appellant's conduct indicated an obvious attempt to avoid police. Finally, prior to the initiation of the pat-down, appellant told Gabrielli that he carried a knife. Thus Deputy Gabrielli had reasonable suspicion, based on specific and articulable facts, to search appellant.

### III. NECESSITY OF MIRANDA WARNINGS

Appellant finally contends that his statements to police should have been suppressed by the trial court because the officers improperly interrogated him without administering proper warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Unless Miranda warnings have been given, any statements a suspect makes during custodial interrogation are inadmissible in the prosecution's case-in-chief. Berkemer v. McCarty, 468 U.S. 420, 434 (1984). After applying the appropriate Fifth Amendment

analysis to determine whether appellant's encounter with police rose to the level of "custodial interrogation," we find no error in the failure to give <u>Miranda</u> warnings in this case.

When determining whether a suspect is "in custody" for <u>Miranda</u> purposes, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (per curiam) (citation omitted). This determination depends "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994). Among the circumstances we consider are whether a suspect is questioned in familiar or neutral surroundings, the number of officers present, the amount of force used by officers to detain the individual, the degree of physical restraint, and the duration and character of the interrogation. <u>Wass v. Commonwealth</u>, 5 Va. App. 27, 32-33, 359 S.E.2d 836, 839 (1987). When officers have a reasonable and articulable suspicion that a suspect is engaged in illegal activity they may ask a limited number of questions to confirm or dispel their suspicion. <u>Cherry v. Commonwealth</u>, 14 Va. App. 135, 141, 415 S.E.2d 242, 245 (1992). Moreover, the length of time between a suspect's detention and the commencement of questioning is a relevant circumstance. <u>See</u> <u>id.</u> (considering the fact that a suspect had only been detained a short period of

time before officers asked if they could search his car as an indication that the suspect was not subjected to custodial interrogation).

There is no bright-line test, however, to distinguish a mere investigative stop from the commencement of custodial interrogation. During investigative stops, brief but complete deprivations of the suspect's liberty are valid, and the police are permitted to use methods of restraint that are reasonable under the circumstances. Thomas, 16 Va. App. at 857, 434 S.E.2d at 323. As such, "'drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes.'" Harris v. Commonwealth, 27 Va. App. 554, 566, 500 S.E.2d 257, 263 (1998) (quoting United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995)). Rather, what distinguishes Terry stops from custodial interrogation is that such stops "'must last no longer than necessary to verify or dispel the officer's suspicion.'" Id. (quoting Leshuk, 65 F.3d at 1109). See Commonwealth v. Milner, 13 Va. App. 556, 558-59, 413 S.E.2d 352, 353-54 (1992) (holding that a detention on a public street for the purpose of holding a suspect for identification did not require warnings, even though the suspect was not free to leave and was searched for weapons).

In this case, the deputies' detention and questioning of appellant did not rise to the level of custodial interrogation

and, thus, did not require them to give <u>Miranda</u> warnings.  At no time did the deputies inform appellant that he was under arrest.  On the contrary, their actions following appellant's apprehension were directed toward confirming or dispelling their suspicions regarding his involvement in illegal activity and assuring their own personal safety.  The deputies' questioning was brief and followed immediately after the detention.  Thus, we affirm the trial court's refusal to suppress appellant's statements.

For the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed.</u>