KELLUM, Judge.
 

 Michael Shane Taylor was arrested and charged with one count of unlawful possession of a controlled substance — hydroco-done — a violation of § 13A-12-212(a)(l), Ala.Code 1975, and one count of the unlawful possession of drug paraphernalia, a violation of § 13A-12-260(c), Ala.Code 1975. Taylor filed a motion to suppress evidence seized from the traffic stop in which the hydrocodone and drug paraphernalia were discovered by police. Following an evi-dentiary hearing, the circuit court granted Taylor’s motion to suppress. Pursuant to Rule 15.7, Ala. R.Crim. P., the State appeals the circuit court’s ruling.
 

 The following evidence was presented by the State at the suppression hearing. At approximately 5:00 a.m. on February 3, 2008, Officer J.M. Butterbrodt and Officer Chris Page of the Montgomery Police Department were patrolling the Decatur and Hale Street area of Montgomery when they initiated a traffic stop of a vehicle being driven by Taylor because the vehicle had no headlights, although it was dark. Before stopping the vehicle, the officers had observed the vehicle parked in front of a house known for drug activity at which a drug arrest had already been made by the police earlier that evening and they had witnessed someone get out of the car and approach the house. Officer Butterbrodt could not identify which occupant of the car had approached the house because the area was not well lit and his view was obscured by a tree.
 

 Taylor could not produce either identification or proof of insurance during the traffic stop, and Officer Butterbrodt asked Taylor to step outside the vehicle. Officer Butterbrodt conducted a patdown search of Taylor’s person without asking for or being given Taylor’s consent. During the patdown, Officer Butterbrodt asked Taylor
 
 *506
 
 if he had anything illegal on his person, and Taylor told him that he had a crack pipe in one of his pockets. Officer Butter-brodt found the crack pipe and placed Taylor under arrest.
 

 At the suppression hearing, Officer But-terbrodt testified that he removed Taylor from the vehicle and conducted a patdown search for officer safety and also to see if Taylor actually possessed identification at the time. When asked why he was suspicious that Taylor could be armed and dangerous based solely on his inability to present identification, Officer Butterbrodt explained, “that’s how I feel as a police officer, that, you know, they could be trying to hide something; they don’t have any ID on them, hiding their identity.” (R. 13.) Outside his suspicion based upon Taylor’s lack of identification, Officer But-terbrodt also pointed to the fact that Taylor was apprehended in a high-crime area in support of his fear that Taylor was armed and dangerous. Officer Butter-brodt also testified that while the incident report prepared after Taylor’s arrest indicated that he removed Taylor from the vehicle and conducted a patdown search because Taylor did not present identification and for concerns of officer safety, his concern for officer safety was based upon Taylor’s failure to present identification. Officer Butterbrodt admitted that he did not include in his report any additional observations that led him to be concerned for his or Officer Page’s safety.
 

 Officer Page testified that it was not police policy to remove someone from his or her vehicle just because the person could not present identification and proof of insurance. Officer Page said that typically the officer will take the person’s information, and then try and verify it. Only if the information cannot be verified will the officer remove the individual from the vehicle and place that person in protective custody.
 

 On August 27, 2009, the circuit court issued an order granting Taylor’s motion to suppress the evidence found pursuant to the police search. The circuit court made the following findings of fact:
 

 “[Taylor] was in an area known for its criminal activity and Officer Butterbrodt observed Defendant Taylor approach the doorway of a home that was known for its drug activity. The officer never saw Defendant Taylor purchase narcotics from the home. As Defendant Taylor was leaving said residence he was stopped for driving without headlights. As a result of said stop, Defendant Taylor was asked to step out of his vehicle after he made it known that he had no proof of insurance or identification. The officer subsequently conducted a pat-down search of [Taylor]. This search lead to the removal of a crack pipe from Defendant Taylor.
 

 “This court notes that the [S]tate of Alabama asked Officer Butterbrodt, ‘... With regard to the pat-down and him eliciting the comment, was the comment made before or after the pat-down?’ The Officer responded, ‘During the pat-down.’ This Court notes that there was no consent given by Defendant Taylor to Officer Butterbrodt to conduct said pat-down and in addition, the officer stated that the purpose of the pat-down search was for weapons. However, there was no indication that [Taylor] posed a threat to the officer or that [Taylor] had any weapons on his person. The testimony from Officer Butterbrodt stated that [Taylor] was pulled over immediately and was truthful and cooperative with the officer. Also, there was no testimony that [Taylor] was acting erratic or nervous. Moreover, during the testimony of Officer [Page
 
 [1]
 
 ], who was the State
 
 *507
 
 of Alabama’s second witness, he stated that his normal protocol for acquiring identification from an individual who has none after a stop has been made, is to take the name, social security, and other relevant information to verify the truthfulness of the stopped individual.
 

 “The State of Alabama, at the instruction of this Court, provided caselaw to support the validity of the pat-down conducted by Officer Butterbrodt, however these cases, although similar, are not on point with the issue of controversy regarding the case at bar.
 

 “Therefore this Court, after weighing all of the testimony, as well as the case law provided by the State, hereby GRANTS the Motion to Suppress.”
 

 (C. 16-18.) This appeal ensued.
 

 On appeal, the State argues that the circuit court erroneously granted Taylor’s motion to suppress. Specifically, the State contends that the factors observed by Officer Butterbrodt gave rise to a reasonable suspicion sufficient to justify patting down Taylor.
 

 In
 
 State v. Landrum,
 
 18 So.3d 424(Ala.Crim.App.2009), this Court explained:
 

 “ ‘This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See
 
 State v. Hill,
 
 690 So.2d 1201, 1203 (Ala.1996);
 
 State v. Otwell,
 
 733 So.2d 950, 952 (Ala.Crim.App.1999).’
 
 State v. Skaggs,
 
 903 So.2d 180, 181 (Ala.Crim.App.2004). In
 
 State v. Hill,
 
 690 So.2d 1201 (Ala.1996), the trial court granted a motion to suppress following a hearing at which it heard only the testimony of one police officer. Regarding the applicable standard of review, the Alabama Supreme Court stated, in pertinent part, as follows:
 

 “ ‘ “Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.”
 
 Stiles v. Brown,
 
 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial judge’s ruling in this case was based upon his interpretation of the term “reasonable suspicion” as applied to an undisputed set of facts; the proper interpretation is a question of law.’
 

 “State v. Hill,
 
 690 So.2d at 1203-04.”
 

 18 So.3d at 426. Because the evidence presented at the suppression hearing is not in dispute, the only issue before this Court is whether the circuit court correctly applied the law to the facts presented at the suppression hearing, and we afford no presumption in favor of the circuit court’s ruling.
 

 “ ‘Under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may conduct investigatory stops of persons or vehicles if they have a “reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur.” ’ ”
 
 State v. Davis,
 
 7 So.3d 468, 470 (Ala.Crim.App.2008), quoting
 
 Wilsher v. State,
 
 611 So.2d 1175, 1179 (Ala.Crim.App.1992), quoting in turn other cases. When an officer stops a suspect pursuant to
 
 Terry,
 
 the officer “ ““ “is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.”
 
 [Terry,]
 
 392 U.S. at 30, 88 S.Ct. at 1884-85.”””
 
 Smith v. State,
 
 884 So.2d 3, 9 (Ala.Crim.App.2003), quoting
 
 Riddlesprig
 
 
 *508
 

 ger v. State,
 
 803 So.2d 579, 582 (Ala.Crim.App.2001), quoting in turn other cases. In
 
 State v. Hails,
 
 814 So.2d 980 (Ala.Crim.App.2000), this Court explained the standards by which any
 
 Terry
 
 search would be judged:
 

 “‘Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons.
 
 Id.
 
 at 27, 88 S.Ct. 1868,.’
 

 “United States v. Raymond,
 
 152 F.3d 309, 312 (4th Cir.1998). ‘And in determining whether the officer acted reasonably in such circumstances, due weight must be given ... to the specific reasonable inference which he is entitled to draw from the facts in light of his experience.’
 
 Terry v. Ohio,
 
 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).”
 

 814 So.2d at 986.
 

 This Court has recognized that a traffic stop is “ ‘ “more analogous” to the brief investigative detention authorized by
 
 Terry
 
 ’ ” than custody traditionally associated with a felony arrest.
 
 Sides v. State,
 
 574 So.2d 856, 858 (Ala.Crim.App.1990), quoting
 
 Pittman v. State,
 
 541 So.2d 583, 585 (Ala.Crim.App.1989), quoting in turn
 
 Berkemer v. McCarty,
 
 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In stopping a vehicle for a traffic violation, a police officer has, in Fourth Amendment terms, seized the driver,
 
 Cains v. State,
 
 555 So.2d 290, 292 (Ala.Crim.App.1989), quoting
 
 Delaware v. Prouse,
 
 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). So long as the police officer has properly seized the occupants of the car, the officer may order the driver,
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), or a passenger,
 
 State v. Hails,
 
 814 So.2d 980 (Ala.Crim.App.2000) (recognizing
 
 Maryland v. Wilson,
 
 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)), cert. denied, 814 So.2d 988 (Ala.2001), out of the car without violating the Fourth Amendment.
 
 See, State v. Abner,
 
 889 So.2d 52, 53-54 (Ala.Crim.App.2004)(recognizing the applicability of
 
 Mimms
 
 and
 
 Wilson
 
 in Alabama).
 

 When a police officer properly stops a vehicle for a traffic violation, the police officer may not only order the driver out of the vehicle, but may also pat down the driver for weapons if the officer reasonably believes that the driver is armed and dangerous.
 
 Mimms,
 
 434 U.S. at 112, 98 S.Ct. 330. In
 
 Arizona v. Johnson,
 
 — U.S. -, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), the United States Supreme Court explained:
 

 “[I]n a traffic-stop setting, the first
 
 Terry
 
 condition — a lawful investigatory stop — is met whenever it is lawful for police
 
 to
 
 detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity,
 
 the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.”
 

 — U.S. at -, 129 S.Ct. at 784 (emphasis added).
 
 See also B.A.H. v. State,
 
 28
 
 *509
 
 So.3d 29 (Ala.Crim.App.2009)(recognizing the applicability of
 
 Arizona v. Johnson
 
 in Alabama).
 

 In the instant case, the officers observed Taylor’s vehicle park in front of a house known for drug activity in a high-crime area and witnessed someone approach the house and return to the car at approximately 5:00 a.m. The officers then witnessed Taylor commit a traffic offense by driving without his headlights on and initiated a traffic stop. During the traffic stop, Taylor told Officer Butterbrodt that he did not have his driver’s license or any form of identification on his person. Officer Butterbrodt testified that Taylor could not identify himself, and that he deemed it necessary to conduct a patdown search because it was his belief as a police officer that Taylor was consciously trying to hide his identity and possibly other evidence of criminal activity that might put the two officers in danger.
 
 See generally Tuohy v. State,
 
 776 So.2d 896, 899-900 (Ala.Crim.App.1999),
 
 writ quashed,
 
 776 So.2d 902 (Ala.2000). Furthermore, Officer Page testified that in situations where a motorist cannot produce a driver’s license, proof of identification, or proof of insurance, he will write down the information given to him by the suspect and attempt to verify the information on his computer. If an officer cannot verify the information given to him by the suspect, Officer Page testified that it was police policy to place the suspect in protective custody “because, at the moment, we don’t know who they are and what kind of warrants they have.” (R. 29.)
 

 Given the totality of the circumstances, Officer Butterbrodt was justified in conducting a patdown search for weapons and seizing the crack pipe found in Taylor’s pocket. The officers observed Taylor in a high-crime area and witnessed someone get out of the car being driven by Taylor and walk up to a house known for its drug activity. This Court has previously held that these factors may give rise to a reasonable suspicion that criminal activity is afoot.
 
 See Landrum,
 
 18 So.3d at 428 (witnessing the appellant repeatedly exit his car and approach a nearby house late at night in a high-crime area created sufficient reasonable suspicion for further investigation pursuant to Terry). Furthermore, Officer Butterbrodt testified that, based on his experience, suspects who say they have no identification may be trying to hide something like weapons, so he felt as if he needed to pat down Taylor in order to make sure he was not armed. Officer Butterbrodt’s inference that Taylor could be armed was reasonable, and this Court must give due weight to “ ‘the specific reasonable inference which [a police officer] is entitled to draw from the facts in light of his experience.’ ”
 
 State v. Hails,
 
 814 So.2d at 986, quoting
 
 Terry,
 
 392 U.S. at 27, 88 S.Ct. 1868. Accordingly, the circuit court abused its discretion when it found that the police lacked sufficient reasonable suspicion to pat down Taylor, and it erred in granting Taylor’s motion to suppress.
 

 Based on the foregoing, we reverse the circuit court’s order suppressing the evidence seized from the patdown search and remand this case for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 WISE, P.J., and WELCH, WINDOM, and MAIN, JJ., concur.
 

 [1]
 

 . The circuit court incorrectly identified the second witness for the State as "Officer Cald
 
 *507
 
 well.” The witness to whom the circuit court was referring was Officer Chris Page.