49 So.3d 1245 (2010)
STATE of Alabama
v.
Elaine BAILEY.
CR-09-0115.
Court of Criminal Appeals of Alabama.
April 30, 2010.
*1246 Troy King, atty. gen., and Audrey K. Jordan, asst. atty. gen., for appellant.
Benjamin E. Schoettker, Montgomery, for appellee.
WISE, Presiding Judge.
The appellee, Elaine Bailey, was indicted for unlawful possession of a controlled substance, a violation of § 13A-12-212(a)(1), Ala.Code 1975. She filed a motion to suppress a crack rock law enforcement officers seized during a patdown search. After conducting a hearing, the trial court granted Bailey's motion to suppress. This appeal followed.
During the suppression hearing, Officer Shalinda Teresa McCoy of the Montgomery Police Department testified that, on May 23, 2009, she and her partner, Officer Caufield, were on the Mobile Highway; that she thought it was probably either 11:00 p.m. or 12:00 a.m.; that they saw a bicycle traveling down the middle of the road and into oncoming traffic; that they saw Bailey and a man on the bicycle; that the man was peddling the bicycle, and Bailey was holding on to him and standing on the back of the bicycle; that the two were not wearing helmets and did not have reflectors or any other type of safety gear; that not wearing helmets and not having reflectors was a safety hazard and a violation; that she and Caufield stopped Bailey and the man; and that they asked Bailey and the man for identification, but neither of them could produce any type of identification. Subsequently, the following occurred:
"[PROSECUTOR:] And when they weren't able to produce identification, what did you do?
"[WITNESS:] Asked both of them to step off the bike and put the bike down. My partner, Officer Caufield, he patted down the guy, the male subject, and I patted down the female. We patted them down for officer safety because they didn't have any identification and we didn't know who they were.
"[PROSECUTOR:] Now, is that a routine practice? When you don't have  when someone doesn't give you ID, do you pat people down? Is it checking for IDs? Is that what you're doing?
"[WITNESS:] No. We're doing it for officer safety to see if they could have weapons or anything because we don't know who they are. They could be exfelons or anything. We don't know who they are."
(R. 6.)
McCoy further testified that she patted down Bailey; that Bailey had bulky items in her pocket, and she asked Bailey what was in her pocket; that Bailey pulled everything out of her pocket; and that Bailey had lip gloss, condoms, and a crack rock in her pocket.
Finally, McCoy testified that the stop occurred in an area that was known for prostitution; that, when she and Caufield were talking to them, the man told her that he did not know Bailey and had just met her, but Bailey said the man was her boyfriend; that the two stories did not add up; and that she and Caufield thought it might be "a prostitution deal or something." (R. 8.)
*1247 The State argues that the trial court erroneously granted Bailey's motion to suppress the crack rock McCoy seized during the patdown search. Specifically, it contends that, based on the totality of the circumstances, a reasonably prudent person in McCoy's position would have been justified in believing that her safety and the safety of others was in danger. In State v. Hill, 690 So.2d 1201, 1203-04 (Ala. 1996), the supreme court stated the following with regard to standards of review to be applied when reviewing a trial court's ruling on a motion to suppress:
"`Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).'
"[Ex parte Agee,] 669 So.2d [102,] 104 [(Ala.1995)]."
In R.W. v. State, 913 So.2d 505, 512-13 (Ala.Crim.App.2005), this court addressed the issue of patdown searches as follows:
"`[I]n Terry v. Ohio, [392 U.S. 1 (1968)], the United States Supreme Court held that a limited search for weapons was partially justified by the need to protect the arresting officer from assault with a concealed weapon. "In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered: whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous; and whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed." LaFave, Search & Seizure § 9.4(a) (2d ed.1987). By concluding that the officer had sufficient articulable suspicion to make the investigatory stop, we also conclude that the officer was rightfully in the presence of the appellant, being the party frisked. Moreover, the United States Supreme Court stated in Terry v. Ohio, supra:
"`"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. Beck v. Ohio, 379 U.S. 89, 91 [85 S.Ct. 223, 224, 13 L.Ed.2d 142] (1964); Brinegar v. United States, 338 U.S. 160, 174-176 [69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879] (1949); Stacey v. Emery, 97 U.S. 642, 645 [24 L.Ed. 1035] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. Brinegar v. United States supra."
"`392 U.S. at 27, 88 S.Ct. at 1883.
"`"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . *1248 he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."
"`Terry v. Ohio, 392 U.S. at 30, 88 S.Ct. at 1884.'
"State v. Richardson, 616 So.2d 400, 402-03 (Ala.Crim.App.1993).
"Here, Officer Drummer and other officers received a dispatch regarding an anonymous caller who reported that several young men were using illegal drugs on the porch of a residence in southwest Birmingham. The residence was in a high-crime area specifically known as an area where illegal drug activity took place; there had also been several recent burglaries in the area. When Officer Drummer and the other officers arrived, they saw several young men on the front porch of the residence as the anonymous caller described. All of the men, including R.W., were fidgeting and appeared nervous, and R.W., at one point, had his hands inside his shirt. While conducting interviews with the men, one officer discovered a `roach' in a flowerbed near the porch. Considering the totality of the circumstances, we conclude that there was reasonable suspicion that R.W. was involved in criminal activity and that R.W. may have been armed so as to justify the Terry stop and frisk. Although Officer Drummer testified that he did not believe, when he initiated the patdown, that R.W. was armed, Officer Drummer's subjective beliefs are irrelevant in determining reasonable suspicion. `Reasonable suspicion, like probable cause, is measured using an objective standard.' Williams [v. State], 716 So.2d [753,] 756 [(Ala.Crim.App.1998)]. Considering the circumstances, a reasonably prudent person in Officer Drummer's position would have been justified in believing that his safety as well as the safety of his fellow officers was in danger. See, e.g., Hall v. State, 897 So.2d 410 (Ala. Crim.App.2003), and Smith v. State, 884 So.2d 3 (Ala.Crim.App.2003). See also Hilliard v. Commonwealth, 17 Va.App. 23, 26, 434 S.E.2d 911, 913 (1993) (`Suspicion of illegal drug possession and distribution is a circumstance which gives rise to an inference of dangerousness.')."
This court has also held that
"`not all stops call for a frisk.' 3 LaFave § 9.4, p. 115. A police officer may conduct a reasonable search of a person for weapons `where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' Terry, 392 U.S. at 27, 88 S.Ct. at 1883.
"In determining whether a frisk is justified, two factors must be considered:
"`In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered. One concerns whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous, and the other whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed.' 3 LaFave at § 9.4(a), p. 109."
Worthy v. State, 473 So.2d 634, 638 (Ala. Crim.App.1985).
*1249 First, we must determine whether McCoy and Caufield were properly in Bailey's presence. Initially, we note that Bailey did not contest that McCoy and Caufield were properly in her presence. Moreover, § 32-5A-261, Ala.Code 1975, provides that "[n]o bicycle shall be used to carry more persons at one time than the number for which it is designed and equipped." Additionally, § 32-5A-263(a), Ala.Code 1975, provides:
"Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction."
Further, § 32-5A-265(a), Ala.Code 1975, provides:
"Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front and with a red reflector on the rear of a type approved by the department which shall be visible from all distances from 100 feet to 600 feet to the rear when directly in front of lawful lower beams of head lamps on a motor vehicle. A lamp emitting a red light visible from a distance of 500 feet to the rear may be used in addition to the red reflector."
Finally, § 32-5A-266(a), Ala.Code 1975, provides:
"It is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this article."
In this case, McCoy testified that it was between 11:00 p.m. and 12:00 a.m.; that Bailey and the man were on a bicycle traveling down the middle of the road and into oncoming traffic; that the man was peddling the bicycle, and Bailey was holding on to him and standing on the back of the bicycle; that Bailey and the man were not wearing helmets and did not have any reflectors; and that the fact that Bailey and the man were not wearing helmets and did not have any reflectors was a safety hazard. Under these circumstances, the officers were rightfully in Bailey's presence.
Next, we must determine whether the officers had reason to believe that Bailey was armed and dangerous. The State presented evidence that the stop occurred between 11:00 p.m. and 12:00 a.m. in an area that was known for prostitution. Also, the stop involved two different individuals, neither of whom could produce identification. McCoy testified that she and Caufield patted down Bailey and the man because they could not produce any identification. She further testified that she did so for officer safety because she did not know who Bailey and the man were and because they could have been ex-felons. During cross-examination, defense counsel asked McCoy why the fact that Bailey did not have identification caused her to be concerned about officer safety, and McCoy explained:
"Well, I didn't know if she had any weapons or anything on her. I didn't know her past history or anything."
(R. 10.)
At the end of the suppression hearing, the trial court stated:
"And I was waiting, [prosecutor]. You know, I was hoping she'd say something like, you know, it was late at night, Judge. I mean, Mobile Highway, you know, I've been out there before at 11 o'clock at night. You know, it's a high crime area. You know, prostitution, drugs. I mean, these people are riding their bike the wrong way. You know, it's late at night. You know, I don't know if they've got weapons or not, you know, but in my experience as a police *1250 officer, I've been out there a million times, and, you know, I'm just not going to take a chance for my safety. I mean, something.
". . . .
". . . I mean, she didn't articulate anything about it. I articulated it for her. I mean, a good cop, that's what I'm going to say. Man, it's 11 o'clock at night. It's Mobile Highway, high prostitution, drug area. I've been out there numerous times. These yahoos are riding their bike in the middle of the road going the wrong way. Shoot, yeah, I'm patting them down. They don't have any identification on them. I don't know what they've got on them. I mean, yeah, I articulated it, but she didn't."
(R. 13-14.) Although McCoy may not have artfully stated her reasons for performing the patdown of Bailey, her testimony clearly established that she did so based on a concern for officer safety.
Further, in State v. Taylor, 46 So.3d 504, 508-509 (Ala.Crim.App.2010), we addressed a similar situation as follows:
"This Court has recognized that a traffic stop is `"`more analogous' to the brief investigative detention authorized by Terry"' than custody traditionally associated with a felony arrest. Sides v. State, 574 So.2d 856, 858 (Ala.Crim.App. 1990), quoting Pittman v. State, 541 So.2d 583, 585 (Ala.Crim.App.1989), quoting in turn Berkemer v. McCarty, 468 U.S. 420, 439 (1984). In stopping a vehicle for a traffic violation, a police officer has, in Fourth Amendment terms, seized the driver, Cains v. State, 555 So.2d 290, 292 (Ala.Crim.App.1989), quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979). So long as the police officer has properly seized the occupants of the car, the officer may order the driver, Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), or a passenger, State v. Hails, 814 So.2d 980 (Ala.Crim.App.2000)(recognizing Maryland v. Wilson, 519 U.S. 408, 415 (1997)), cert. denied, 814 So.2d 988 (Ala. 2001), out of the car without violating the Fourth Amendment. See, State v. Abner, 889 So.2d 52, 53-54 (Ala.Crim. App.2004) (recognizing the applicability of Mimms and Wilson in Alabama).
"When a police officer properly stops a vehicle for a traffic violation, the police officer may not only order the driver out of the vehicle, but may also pat down the driver for weapons if the officer reasonably believes that the driver is armed and dangerous. Mimms, 434 U.S. at 112. In Arizona v. Johnson, ___ U.S. ___, 129 S.Ct. 781 (2009), the United States Supreme Court explained:
"`[I]n a traffic-stop setting, the first Terry condition  a lawful investigatory stop  is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.'
"___ U.S. at ___, 129 S.Ct. at 784 (emphasis added). See also B.A.H. v. State, 28 So.3d 29 (Ala.Crim.App.2009) (recognizing the applicability of Arizona v. Johnson in Alabama).
"In the instant case, the officers observed Taylor's vehicle park in front of a house known for drug activity in a high-crime area and witnessed someone approach the house and return to the car *1251 at approximately 5:00 a.m. The officers then witnessed Taylor commit a traffic offense by driving without his headlights on and initiated a traffic stop. During the traffic stop, Taylor told Officer Butterbrodt that he did not have his driver's license or any form of identification on his person. Officer Butterbrodt testified that Taylor could not identify himself, and that he deemed it necessary to conduct a patdown search because it was his belief as a police officer that Taylor was consciously trying to hide his identity and possibly other evidence of criminal activity that might put the two officers in danger. See generally Tuohy v. State, 776 So.2d 896, 899-900 (Ala.Crim. App.1999), writ quashed, 776 So.2d 902 (Ala.2000). Furthermore, Officer Page testified that in situations where a motorist cannot produce a driver's license, proof of identification, or proof of insurance, he will write down the information given to him by the suspect and attempt to verify the information on his computer. If an officer cannot verify the information given to him by the suspect, Officer Page testified that it was police policy to place the suspect in protective custody `because, at the moment, we don't know who they are and what kind of warrants they have.' (R. 29.)
"Given the totality of the circumstances, Officer Butterbrodt was justified in conducting a patdown search for weapons and seizing the crack pipe found in Taylor's pocket. The officers observed Taylor in a high-crime area and witnessed someone get out of the car being driven by Taylor and walk up to a house known for its drug activity. This Court has previously held that these factors may give rise to a reasonable suspicion that criminal activity is afoot. See Landrum, 18 So.3d at 428 (witnessing the appellant repeatedly exit his car and approach a nearby house late at night in a high-crime area created sufficient reasonable suspicion for further investigation pursuant to Terry). Furthermore, Officer Butterbrodt testified that, based on his experience, suspects who say they have no identification may be trying to hide something like weapons, so he felt as if he needed to pat down Taylor in order to make sure he was not armed. Officer Butterbrodt's inference that Taylor could be armed was reasonable, and this Court must give due weight to `"the specific reasonable inference which [a police officer] is entitled to draw from the facts in light of his experience."' State v. Hails, 814 So.2d at 986, quoting Terry, 392 U.S. at 27. Accordingly, the circuit court abused its discretion when it found that the police lacked sufficient reasonable suspicion to pat down Taylor, and it erred in granting Taylor's motion to suppress."
Based on the totality of the circumstances in this case, a reasonably prudent person in McCoy's circumstances would have been warranted in the belief that her safety or that of others was in danger. In fact, this case highlights the precarious situation law enforcement officers are faced with when they stop unknown individuals in high crime areas, particularly at night. Therefore, we conclude that the trial court erroneously granted Bailey's motion to suppress. Accordingly, we reverse the trial court's judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, KELLUM, and MAIN, JJ., concur. WELCH, J., dissents, with opinion.
WELCH, Judge, dissenting.
I disagree with the majority's determination that the trial court erred when it *1252 granted Elaine Bailey's motion to suppress. The trial court correctly determined that the State did not establish that Officer McCoy had reasonable grounds to believe that Bailey was armed and dangerous and that it was necessary for the protection of the officers and others to conduct a patdown search.
The majority seems to imply that the trial court granted Bailey's motion to suppress, at least in part, because the court determined that Officer McCoy did not "artfully" state her reasons for conducting the patdown search; however, the majority found this ruling to be error because, according to the majority opinion, Officer McCoy sufficiently articulated that the search was based on her concern for her and her fellow officer's safety.
Officer McCoy's testimony establishes clearly that she conducted the patdown search because Bailey and her companion did not produce any identification, and the officers therefore did not know who they were. The only mention of "officer safety" was related to the lack of identification and Officer McCoy's speculation that "[t]hey could be ex-felons or anything." Even under a liberal application of the principles announced in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the facts before the trial judge would not have warranted a reasonably prudent person to believe that Bailey was armed and dangerous. Being presented with only the officer's "unparticularized suspicion or `hunch,'" 392 U.S. at 27, 88 S.Ct. 1868, the trial court correctly suppressed the evidence obtained in the search.
I note, moreover, that, although Officer McCoy testified that the patdown revealed "bulky items" in Bailey's pocket, she did not testify that she had any indication that the items might have been weapons.
"Q. All right. You also mentioned the word routine practice when people don't have ID. Is it your routine practice to pat somebody down when they don't have identification?
"A. Yes.
"Q. Okay. No matter  there's no other circumstances involving whatever? If somebody  if you ask for ID and they don't have an ID 
"A. No, no, no, I'm not saying that. If they're in a vehicle or we come in contact with them, yes, that is correct."
(R. 9-10.)
Officer McCoy testified that she routinely performed a patdown when an individual could not produce any identification. She did not state any facts that indicate a reasonable belief that Bailey was armed.
The facts of this case are similar to Smith v. State, 19 So.3d 912 (Ala.Crim. App.2009), in which this court reversed a trial court's denial of a motion to suppress and stated:
"In this case, [Officer] Danley testified that he stopped Smith because he was walking in the middle of the street; that the area was dark; and that there was a lot of drug activity in that area. With regard to the patdown, Danley asserted that he patted Smith down for officer safety and that he usually checks subjects for weapons when he gets out of the vehicle and approaches them. However, Danley did not testify that he believed Smith was armed. Further, he did not testify as to any specific facts that would support a finding that he was justified in believing that Smith was armed and presently dangerous. Therefore, Danley was not justified in stopping Smith and performing a patdown search, and the trial court erred when it denied Smith's motion to suppress the *1253 evidence Danley seized from his person."
19 So.3d 912 at 919.
An officer may patdown an individual only when the officer has reason to believe that he is dealing with an individual who is armed and dangerous.
"Furthermore, there was nothing in the record concerning the officers' justification for the weapons frisk performed on the appellant. The right to frisk a suspect for weapons is separate from an officer's right to stop a suspect. Under Terry analysis, it is only `where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime,' that a weapons frisk comes into play. Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883. Moreover, the officer `must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.' Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968)."
Brannon v. State, 549 So.2d 532, 538 (Ala. Crim.App.1989).
The testimony presented to the trial court did not contain sufficient facts to support the Terry patdown search. The majority quoted the testimony of Officer McCoy as justification for the patdown. The facts presented by the majority were as follows:
"The State presented evidence indicating that the stop occurred between 11:00 p.m. and 12:00 a.m. in an area known for prostitution. Also, the stop involved two different individuals, neither of whom could produce identification. Officer McCoy testified that she and [Officer] Caufield patted down Bailey and the man because Bailey and the man could not produce any identification. She further testified that she did so for officer safety because she did not know who Bailey and the man were and because they could have been ex-felons. During cross-examination, defense counsel asked Officer McCoy why the fact that Bailey did not have identification caused her to be concerned about officer safety, and Officer McCoy explained:
"`Well, I didn't know if she had any weapons or anything on her. I didn't know her past history or anything.'"
(R. 10.)"
Bailey v. State, [Ms. CR-09-0115, April 30, 2010] 49 So.3d 1245, 1249 (Ala.Crim. App.2010).
Under that rationale, an officer is justified in searching anyone whose history he or she did not know. Officer McCoy did not articulate any facts that support the view that a reasonably prudent person in the officer's situation would have believed that Bailey was armed and dangerous.
The trial court's judgment suppressing the evidence was sound and should be affirmed. Therefore, I respectfully dissent.