WELCH, Judge,
dissenting.
I disagree with the majority’s determination that the trial court erred when it *1252 granted Elaine Bailey’s motion to suppress. The trial court correctly determined that the State did not establish that Officer McCoy had reasonable grounds to believe that Bailey was armed and dangerous and that it was necessary for the protection of the officers and others to conduct a patdown search.
The majority seems to imply that the trial court granted Bailey’s motion to suppress, at least in part, because the court determined that Officer McCoy did not “artfully” state her reasons for conducting the patdown search; however, the majority found this ruling to be error because, according to the majority opinion, Officer McCoy sufficiently articulated that the search was based on her concern for her and her fellow officer’s safety.
Officer McCoy’s testimony establishes clearly that she conducted the patdown search because Bailey and her companion did not produce any identification, and the officers therefore did not know who they were. The only mention of “officer safety” was related to the lack of identification and Officer McCoy’s speculation that “[tjhey could be ex-felons or anything.” Even under a liberal application of the principles announced in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the facts before the trial judge would not have warranted a reasonably prudent person to believe that Bailey was armed and dangerous. Being presented with only the officer’s “unparticularized suspicion or ‘hunch,’ ” 392 U.S. at 27, 88 S.Ct. 1868, the trial court correctly suppressed the evidence obtained in the search.
I note, moreover, that, although Officer McCoy testified that the patdown revealed “bulky items” in Bailey’s pocket, she did not testify that she had any indication that the items might have been weapons.
“Q. All right. You also mentioned the word routine practice when people don’t have ID. Is it your routine practice to pat somebody down when they don’t have identification?
“A. Yes.
“Q. Okay. No matter — there’s no other circumstances involving whatever? If somebody — if you ask for ID and they don’t have an ID—
“A. No, no, no, I’m not saying that. If they’re in a vehicle or we come in contact with them, yes, that is correct.”
(R. 9-10.)
Officer McCoy testified that she routinely performed a patdown when an individual could not produce any identification. She did not state any facts that indicate a reasonable belief that Bailey was armed.
The facts of this case are similar to Smith v. State, 19 So.3d 912 (Ala.Crim.App.2009), in which this court reversed a trial court’s denial of a motion to suppress and stated:
“In this case, [Officer] Danley testified that he stopped Smith because he was walking in the middle of the street; that the area was dark; and that there was a lot of drug activity in that area. With regard to the patdown, Danley asserted that he patted Smith down for officer safety and that he usually checks subjects for weapons when he gets out of the vehicle and approaches them. However, Danley did not testify that he believed Smith was armed. Further, he did not testify as to any specific facts that would support a finding that he was justified in believing that Smith was armed and presently dangerous. Therefore, Danley was not justified in stopping Smith and performing a patdown search, and the trial court erred when it denied Smith’s motion to suppress the *1253 evidence Danley seized from his person.”
19 So.3d at 919.
An officer may patdown an individual only when the officer has reason to believe that he is dealing with an individual who is armed and dangerous.
“Furthermore, there was nothing in the record concerning the officers’ justification for the weapons frisk performed on the appellant. The right to frisk a suspect for weapons is separate from an officer’s right to stop a suspect. Under Terry analysis, it is only ‘where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime,’ that a weapons frisk comes into play. Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883. Moreover, the officer ‘must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.’ Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).”
Brannon v. State, 549 So.2d 532, 538 (Ala.Crim.App.1989).
The testimony presented to the trial court did not contain sufficient facts to support the Terry patdown search. The majority quoted the testimony of Officer McCoy as justification for the patdown. The facts presented by the majority were as follows:
“The State presented evidence indicating that the stop occurred between 11:00 p.m. and 12:00 a.m. in an area known for prostitution. Also, the stop involved two different individuals, neither of whom could produce identification. Officer McCoy testified that she and [Officer] Caufield patted down Bailey and the man because Bailey and the man could not produce any identification. She further testified that she did so for officer safety because she did not know who Bailey and the man were and because they could have been ex-felons. During cross-examination, defense counsel asked Officer McCoy why the fact that Bailey did not have identification caused her to be concerned about officer safety, and Officer McCoy explained:
“ ‘Well, I didn’t know if she had any weapons or anything on her. I didn’t know her past history or anything.’ ”
“(R. 10.)”
Bailey v. State, 49 So.3d 1245, 1249 (Ala.Crim.App.2010).
Under that rationale, an officer is justified in searching anyone whose history he or she did not know. Officer McCoy did not articulate any facts that support the view that a reasonably prudent person in the officer’s situation would have believed that Bailey was armed and dangerous.
The trial court’s judgment suppressing the evidence was sound and should be affirmed. Therefore, I respectfully dissent.