Johnny Lee Abner was arrested and charged with one count of unlawful possession of a controlled substance (cocaine), a violation of § 13A-12-212, Ala. Code 1975, and one count of unlawful possession of marijuana in the second degree, a violation of § 13A-12-214, Ala. Code 1975.[1] The circuit court granted Abner's oral motion to suppress certain evidence, namely, the cocaine and marijuana found on the passenger seat where Abner was sitting and additional cocaine found in Abner's pocket after he was taken into custody. Pursuant to Rule 15.7, Ala.R.Crim.P., the State appeals from the circuit court's grant of Abner's motion to suppress.
The evidence presented at the suppression hearing established the following: On March 21, 2000, Montgomery County Deputy Sheriff Scott Cone observed a vehicle with no rearview mirror and a malfunctioning brake light. Deputy Cone stopped the vehicle and asked the driver to produce his driver's license. The driver, however, was unable to produce a driver's license because his license had been revoked. Because Deputy Cone planned to issue the driver a warning ticket and to allow the passenger, Johnny Lee Abner, to drive the vehicle, he asked Abner for his identification. Following Deputy Cone's request, Abner appeared extremely nervous. As a result, Deputy Cone became concerned for his safety and asked Abner to step out of the vehicle. When Abner got out of the vehicle, Deputy Cone observed, in plain view, rolling papers, a white rock-like substance, and a small plastic bag sticking out from the side of the passenger seat. Further investigation revealed that the plastic bag contained a green, leafy substance. Based on his experience and training, Deputy Cone believed that the items he saw were cocaine and marijuana. Upon further questioning of the two men, Abner admitted that the drugs belonged to him. Abner was taken into custody; a search of his person revealed another white rock-like substance that appeared to be cocaine.
The State contends that the circuit court erred when it granted Abner's motion to suppress the cocaine and marijuana that were in plain view after Deputy Cone asked him to get out of the vehicle. We agree.
This Court reviews de novo a circuit court's decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996); State v.Otwell, 733 So.2d 950, 952 (Ala.Crim.App. 1999). Here, the facts are uncontested; the only issue is the circuit court's application of the law to those facts.
In Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330,54 L.Ed.2d 331 (1977), the United States Supreme Court held that a police officer may, as a matter of course, order the driver of a lawfully stopped vehicle to exit his vehicle without violating the Fourth Amendment's prohibition against unreasonable seizures. The *Page 54 
Supreme Court extended this rule to passengers of lawfully stopped vehicles in Maryland v. Wilson, 519 U.S. 408, 415,117 S.Ct. 882, 137 L.Ed.2d 41 (1997). In extending this rule, the Court applied a balancing test:
 "On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous encounters. . . . [T]he fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer.
 "On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.
". . . .
 "In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."
519 U.S. at 413-15, 117 S.Ct. 882 (footnotes omitted). This Court recognized the rule of Maryland v. Wilson in State v. Hails,814 So.2d 980, 986 (Ala.Crim.App. 2000), cert. denied,814 So.2d 988 (Ala. 2001).
Here, Deputy Cone explained that after discovering the driver of the vehicle did not have a valid driver's license, he planned to allow Abner, the vehicle's passenger, to drive the vehicle away from the traffic stop if Abner was able to produce a driver's license. Thus, contrary to Abner's contention, the traffic stop was not yet complete at the time Abner was directed to get out of the vehicle. Deputy Cone testified that because Abner appeared nervous when Deputy Cone asked him to produce his driver's license, he then became concerned for his safety and ordered Abner out of the car. Under the circumstances, it was not unreasonable for Deputy Cone to order Abner from the vehicle. Thus, no Fourth Amendment violation occurred.
Once Abner got out of the vehicle, Deputy Cone saw the contraband in plain view, in and around the passenger's seat where Abner had been sitting. Seeing what is in plain view does not constitute a search. See, e.g., Johnson v. State,784 So.2d 373, 375 (Ala.Crim.App. 2000); Pearson v. State, 542 So.2d 955,956 (Ala.Crim.App. 1989). Therefore, the seizure of the cocaine and marijuana without a warrant was lawful under the plain-view doctrine. *Page 55 
See Coolidge v. New Hampshire, 403 U.S. 443, 467-68,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Christmas v. State, 624 So.2d 684,686 (Ala.Crim.App. 1993). Moreover, when the two men were questioned further about the drugs, Abner admitted the drugs belonged to him.
Based on the foregoing, the circuit court erred in granting Abner's motion to suppress the drugs seized as a result of Deputy Cone's traffic stop. The judgment of the circuit court is hereby reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.
[1] We note that the indictment mistakenly cited the first-degree-possession-of-marijuana statute, § 13A-12-213, rather than § 13A-12-214, the second-degree-possession statute. Given that the charging language states that Abner was charged with possession of marijuana for personal use and/or second-degree possession of marijuana, this appears to be a scrivener's error. See Ex parte Bush, 431 So.2d 563, 564 (Ala. 1983) ("Miscitation of a code section does not void an indictment which otherwise states an offense, and, in the absence of a showing of actual prejudice to the defendant, reference to the erroneous code section will be treated as mere surplusage.").