Steve Ricardo Rodgers was arrested and charged with trafficking in heroin, a violation of § 13A-12-231(3), Ala. Code 1975. Rodgers filed a pretrial motion to suppress evidence in which he argued that the seizure of evidence during a traffic stop violated theFourth Amendment to the United States Constitution. Following an evidentiary hearing, the trial court granted Rodgers's motion. Pursuant to Rule 15.7, Ala.R.Crim.P., the State appeals from the circuit court's grant of Rodgers's motion to suppress.
The evidence presented at the suppression hearing established the following: On July 23, 2000, Marshall County Sheriff's Department Deputy Robert Pettit noticed an automobile driving in excess of the posted speed limit. His dash-mounted radar unit indicated that the vehicle was traveling at 75 miles per hour in a 65-mile-per-hour zone. Deputy Pettit activated his blue lights and initiated a traffic stop for the speeding violation at 10:30 p.m. Rodgers was driving the vehicle. Following routine procedures, Deputy Pettit checked Rodgers's driver's license and registration. His driver's license had been issued in Iowa. Rodgers told Deputy Pettit that the car he was driving, which had a Florida license plate, was a rental car and that he had rented it in the Atlanta area. Deputy Pettit determined that Rodgers's license was current and that no warrants were pending against him. Deputy Pettit also ran the Florida license plate number through the database and determined that it was valid. He also checked the registration and rental agreement and all the documentation was valid. Deputy Pettit then engaged Rodgers in a conversation about the rental status of his automobile. He also asked Rodgers where he was going and why. Rodgers explained that he was picking up his daughter in Huntsville. As Deputy Pettit was returning to his patrol car, his audio on the recording camera stopped operating, so the videotape admitted into evidence did not record all of the traffic stop. He testified, however, that based on his suspicions that Rodgers might be involved in illegal activity, he called for backup. Deputy Greg Bobo and two other officers soon arrived on the scene.
Deputy Pettit continued his conversation with Rodgers, asking him a series of questions regarding the exact address of his destination in Huntsville. Deputy Pettit testified that he recognized the landmark directions Rodgers recited in response as being actually in Decatur. He also asked him whether the car had been rented at the Atlanta airport.
Deputy Pettit discussed with the backup officers that, notwithstanding his suspicions about the Iowa driver's license, the use of a rental car from Atlanta, and the destination described by Rodgers, he did not have probable cause or reasonable suspicion to conduct a warrantless search of the vehicle. Rodgers did not appear to be under the influence, nor was there an indication of other illegal activity. The officers agreed that they could ask Rodgers if he would consent to a search of the vehicle. When Deputy Pettit asked Rodgers if he could search the vehicle, at 10:41 p.m., Rodgers consented without reservation. The search yielded approximately 57 grams of heroin.
The State contends that the circuit court erred when it granted Rodgers's motion to suppress the heroin that was seized as a result of a consensual search of the vehicle. Rodgers, however, maintains that the delay in the issuance of the traffic citation and his continued detention was improper; *Page 178 
this delay, he argues, rendered his subsequent consent to search invalid.
Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968), law-enforcement officers may stop a vehicle for investigatory purposes based on a traffic violation. See Adamsv. State, 815 So.2d 574, 575 (Ala.Crim.App. 1999), rev'd on other grounds, 815 So.2d 578 (Ala. 2001); Martinez v. State,624 So.2d 711, 714 (Ala.Crim.App. 1993). Therefore, Deputy Pettit was within his authority in making the initial traffic stop for speeding.
Here, Deputy Pettit testified that after stopping Rodgers for speeding, the information he obtained as a result of that stop — the vehicle Rodgers was driving had been rented in Atlanta and bore a Florida license plate and was being driven by an individual holding an Iowa driver's license and had been stopped in Marshall County en route to Huntsville — made him suspicious of Rodgers's explanation. Based on these circumstances, Deputy Pettit asked Rodgers if he could search the vehicle. Rodgers advised Deputy Pettit that he could. Because there is some dispute as to precisely when the citation was written, Rodgers argues that any delay in writing the ticket or detention beyond the purpose of the initial stop invalidated any further purpose of the traffic stop and rendered his consent to search the vehicle invalid. We disagree.
 "A mere request on the part of a law enforcement officer to search a vehicle after pulling the vehicle over for a legitimate purpose does not amount to a detention of the person of whom the request is made, assuming the officer has disposed of the legitimate purpose for which the vehicle was stopped. In addition, consent to the search waives any right to privacy afforded by the Fourth Amendment. Ball v. State, 592 So.2d 1071 (Ala.Crim.App. 1991).
 "In [State v.] Washington, [623 So.2d 392
(Ala.Crim.App. 1993),] this court said there is no constitutional requirement of reasonable suspicion as a prerequisite for seeking consent to search. State v. Washington, 623 So.2d at 397 (quoting State v. Abreu, 257 N.J.Super. 549, 608 A.2d 986, 989, (1992) (citing 3 W. LaFave, Search and Seizure § 8.1 at 32 n. 5.1 (Supp. 1992)). We do not agree with the appellant's assertion that our decision in Washington implies that a police officer needs a factual basis, in addition to the legitimate purpose for which the vehicle was stopped, to request the driver's permission to search the vehicle for drugs. Consent searches play an important role in police investigations and should not be limited or restricted to the same extent as investigatory stops and searches under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). `If consent is given, evidence may thereby be uncovered in a situation where there was no other lawful basis for making the search.' 3 LaFave, Search and Seizure § 8.1 at 148 (1987).
 "`"Consent searches were deemed to be a `wholly legitimate aspect of effective police activity,' for when there is no probable cause they `may be the only means of obtaining important and reliable evidence,' and even when there is probable cause a search by consent `may result in considerably less inconvenience for the subject of the search.'
"`". . . .
 "`"Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions. The circumstances that prompt the initial request to search may develop *Page 179 
quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime."'
 "Ball v. State, 592 So.2d 1071, 1073 (Ala.Crim.App. 1991) (quoting 3 LaFave, Search and Seizure § 8.1(a) (1987))."
Tillman v. State, 647 So.2d 7, 9-10 (Ala.Crim.App. 1994).
In the instant case, Deputy Pettit informed Rodgers that he was speeding and indicated that he was citing him for the violation. Rodgers admitted that he was trying to hurry to reach his destination because it was late and he did not want to fall asleep. Based on the circumstances surrounding the traffic stop — a vehicle rented in Atlanta bearing a Florida license plate driven by an individual holding an Iowa driver's license and stopped in Marshall County en route to Huntsville — Deputy Pettit's inquiry into Rodgers's plans was legitimate. When Rodgers's responses seemed a bit too detailed and rehearsed, Deputy Pettit was suspicious that Rodgers might have drugs in the car. Based on the totality of the circumstances, Deputy Pettit was within his authority to ask for Rodgers's consent to search the vehicle based on the totality of the circumstances. Deputy Pettit's continued investigation did not render Rodgers's detention illegal nor did it invalidate Rodgers's consent to search the vehicle. Accordingly, the trial court erred in granting the motion to suppress.
Based on the foregoing, the judgment of the trial court is hereby reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and BASCHAB and SHAW, JJ., concur. COBB, J., concurs in the result, with opinion.