WISE, Presiding Judge.
The appellee, Elaine Bailey, was indicted for unlawful possession of a controlled substance, a violation of § 13A-12-212(a)(1), Ala.Code 1975. She filed a motion to suppress a crack rock law enforcement officers seized during a patdown search. After conducting a hearing, the trial court granted Bailey’s motion to suppress. This appeal followed.
During the suppression hearing, Officer Shalinda Teresa McCoy of the Montgomery Police Department testified that, on May 23, 2009, she and her partner, Officer Caufield, were on the Mobile Highway; that she thought it was probably either 11:00 p.m. or 12:00 a.m.; that they saw a bicycle traveling down the middle of the road and into oncoming traffic; that they saw Bailey and a man on the bicycle; that the man was peddling the bicycle, and Bailey was holding onto him and standing on the back of the bicycle; that the two were not wearing helmets and did not have reflectors or any other type of safety gear; that not wearing helmets and not having reflectors was a safety hazard and a violation; that she and Caufield stopped Bailey and the man; and that they asked Bailey and the man for identification, but neither of them could produce any type of identification. Subsequently, the following occurred:
“[PROSECUTOR:] And when they weren’t able to produce identification, what did you do?
“[WITNESS:] Asked both of them to step off the bike and put the bike down. My partner, Officer Caufield, he patted down the guy, the male subject, and I patted down the female. We patted them down for officer safety because they didn’t have any identification and we didn’t know who they were.
“[PROSECUTOR:] Now, is that a routine practice? When you don’t have — when someone doesn’t give you ID, do you pat people down? Is it checking for IDs? Is that what you’re doing?
“[WITNESS:] No. We’re doing it for officer safety to see if they could have weapons or anything because we don’t know who they are. They could be ex-felons or anything. We don’t know who they are.”
(R. 6.)
McCoy further testified that she patted down Bailey; that Bailey had bulky items in her pocket, and she asked Bailey what was in her pocket; that Bailey pulled everything out of her pocket; and that Bailey had lip gloss, condoms, and a crack rock in her pocket.
Finally, McCoy testified that the stop occurred in an area that was known for prostitution; that, when she and Caufield were talking to them, the man told her that he did not know Bailey and had just met her, but Bailey said the man was her boyfriend; that the two stories did not add up; and that she and Caufield thought it might be “a prostitution deal or something.” (R.8.)
*1247 The State argues that the trial court erroneously granted Bailey’s motion to suppress the crack rock McCoy seized during the patdown search. Specifically, it contends that, based on the totality of the circumstances, a reasonably prudent person in McCoy’s position would have been justified in believing that her safety and the safety of others was in danger. In State v. Hill, 690 So.2d 1201, 1203-04 (Ala.1996), the supreme court stated the following with regard to standards of review to be applied when reviewing a trial court’s ruling on a motion to suppress:
“ “Where evidence is presented to the trial court ore terms in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 686 So.2d 415 (Ala.1994).’
“[Ex parte Agee,] 669 So.2d [102,] 104 [ (Ala.1995) ].”
In R.W. v. State, 913 So.2d 505, 512-13 (Ala.Crim.App.2005), this court addressed the issue of patdown searches as follows:
“ ‘[I]n Terry v. Ohio, [392 U.S. 1 (1968) ], the United States Supreme Court held that a limited search for weapons was partially justified by the need to protect the arresting officer from assault with a concealed weapon. “In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered: whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous; and whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed.” LaFave, Search & Seizure § 9.4(a) (2d ed.1987). By concluding that the officer had sufficient articulable suspicion to make the investigatory stop, we also conclude that the officer was rightfully in the presence of the appellant, being the party frisked. Moreover, the United States Supreme Court stated in Terry v. Ohio, supra:
“ ‘ “The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. Beck v. Ohio, 379 U.S. 89, 91 [85 S.Ct. 223, 224, 13 L.Ed.2d 142] (1964); Brinegar v. United States, 338 U.S. 160, 174-176 [69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879] (1949); Stacey v. Emery, 97 U.S. 642, 645 [24 L.Ed. 1035] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. Brinegar v. United States supra.”
“ ‘392 U.S. at 27, 88 S.Ct. at 1883.
“ ‘ “We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous ... *1248 he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.”
‘“Terry v. Ohio, 392 U.S. at 30, 88 S.Ct. at 1884.’
“State v. Richardson, 616 So.2d 400, 402-03 (Ala.Crim.App.1993).
“Here, Officer Drummer and other officers received a dispatch regarding an anonymous caller who reported that several young men were using illegal drugs on the porch of a residence in southwest Birmingham. The residence was in a high-crime area specifically known as an area where illegal drug activity took place; there had also been several recent burglaries in the area. When Officer Drummer and the other officers arrived, they saw several young men on the front porch of the residence as the anonymous caller described. All of the men, including R.W., were fidgeting and appeared nervous, and R.W., at one point, had his hands inside his shirt. While conducting interviews with the men, one officer discovered a ‘roach’ in a flowerbed near the porch. Considering the totality of the circumstances, we conclude that there was reasonable suspicion that R.W. was involved in criminal activity and that R.W. may have been armed so as to justify the Terry stop and frisk. Although Officer Drummer testified that he did not believe, when he initiated the patdown, that R.W. was armed, Officer Drummer’s subjective beliefs are irrelevant in determining reasonable suspicion. ‘Reasonable suspicion, like probable cause, is measured using an objective standard. Williams [v. State], 716 So.2d [753,] 756 [ (Ala.Crim.App.1998) ]. Considering the circumstances, a reasonably prudent person in Officer Drummer’s position would have been justified in believing that his safety as well as the safety of his fellow officers was in danger. See, e.g., Hall v. State, 897 So.2d 410 (Ala.Crim.App.2003), and Smith v. State, 884 So.2d 3 (Ala.Crim,App.2003). See also Hilliard v. Commonwealth, 17 Va.App. 23, 26, 434 S.E.2d 911, 913 (1993) (‘Suspicion of illegal drug possession and distribution is a circumstance which gives rise to an inference of dangerousness.’).”
This court has also held that
“ ‘not all stops call for a frisk.’ 3 La-Fave § 9.4, p. 115. A police officer may conduct a reasonable search of a person for weapons ‘where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.’ Terry, 392 U.S. at 27, 88 S.Ct. at 1883.
“In determining whether a frisk is justified, two factors must be considered:
“ ‘In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered. One concerns whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous, and the other whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed.’ 3 LaFave at § 9.4(a), p. 109.”
Worthy v. State, 473 So.2d 634, 638 (Ala.Crim.App.1985).
*1249 First, we must determine whether McCoy and Caufield were properly in Bailey’s presence. Initially, we note that Bailey did not contest that McCoy and Cau-field were properly in her presence. Moreover, § 32-5A-261, Ala.Code 1975, provides that “[n]o bicycle shall be used to carry more persons at one time than the number for which it is designed and equipped.” Additionally, § 32-5A-263(a), Ala.Code 1975, provides:
“Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction.”
Further, § 32-5A-265(a), Ala.Code 1975, provides:
“Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front and with a red reflector on the rear of a type approved by the department which shall be visible from all distances from 100 feet to 600 feet to the rear when directly in front of lawful lower beams of head lamps on a motor vehicle. A lamp emitting a red light visible from a distance of 500 feet to the rear may be used in addition to the red reflector.”
Finally, § 32-5A-266(a), Ala.Code 1975, provides:
“It is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this article.”
In this case, McCoy testified that it was between 11:00 p.m. and 12:00 a.m.; that Bailey and the man were on a bicycle traveling down the middle of the road and into oncoming traffic; that the man was peddling the bicycle, and Bailey was holding on to him and standing on the back of the bicycle; that Bailey and the man were not wearing helmets and did not have any reflectors; and that the fact that Bailey and the man were not wearing helmets and did not have any reflectors was a safety hazard. Under these circumstances, the officers were rightfully in Bailey’s presence.
Next, we must determine whether the officers had reason to believe that Bailey was armed and dangerous. The State presented evidence that the stop occurred between 11:00 p.m. and 12:00 a.m. in an area that was known for prostitution. Also, the stop involved two different individuals, neither of whom could produce identification. McCoy testified that she and Caufield patted down Bailey and the man because they could not produce any identification. She further testified that she did so for officer safety because she did not know who Bailey and the man were and because they could have been ex-felons. During cross-examination, defense counsel asked McCoy why the fact that Bailey did not have identification caused her to be concerned about officer safety, and McCoy explained:
“Well, I didn’t know if she had any weapons or anything on her. I didn’t know her past history or anything.”
(R. 10.)
At the end of the suppression hearing, the trial court stated:
“And I was waiting, [prosecutor]. You know, I was hoping she’d say something like, you know, it was late at night, Judge. I mean, Mobile Highway, you know, I’ve been out there before at 11 o’clock at night. You know, it’s a high crime area. You know, prostitution, drugs. I mean, these people are riding their bike the wrong way. You know, it’s late at night. You know, I don’t know if they’ve got weapons or not, you know, but in my experience as a police *1250 officer, I’ve been out there a million times, and, you know, I’m just not going to take a chance for my safety. I mean, something.
[[Image here]]
“... I mean, she didn’t articulate anything about it. I articulated it for her. I mean, a good cop, that’s what I’m going to say. Man, it’s 11 o’clock at night. It’s Mobile Highway, high prostitution, drug area. I’ve been out there numerous times. These yahoos are riding their bike in the middle of the road going the wrong way. Shoot, yeah, I’m patting them down. They don’t have any identification on them. I don’t know what they’ve got on them. I mean, yeah, I articulated it, but she didn’t.”
(R. 13-14.) Although McCoy may not have artfully stated her reasons for performing the patdown of Bailey, her testimony clearly established that she did so based on a concern for officer safety.
Further, in State v. Taylor, 46 So.3d 504, 508-09 (Ala.Crim.App.2010), we addressed a similar situation as follows:
“This Court has recognized that a traffic stop is ‘ “ ‘more analogous’ to the brief investigative detention authorized by Terry” ’ than custody traditionally associated with a felony arrest. Sides v. State, 574 So.2d 856, 858 (Ala.Crim.App.1990), quoting Pittman v. State, 541 So.2d 583, 585 (Ala.Crim.App.1989), quoting in turn Berkemer v. McCarty, 468 U.S. 420, 439 (1984). In stopping a vehicle for a traffic violation, a police officer has, in Fourth Amendment terms, seized the driver, Cains v. State, 555 So.2d 290, 292 (Ala.Crim.App.1989), quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979). So long as the police officer has properly seized the occupants of the car, the officer may order the driver, Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), or a passenger, State v. Hails, 814 So.2d 980 (Ala.Crim.App.2000)(recognizing Maryland v. Wilson, 519 U.S. 408, 415 (1997)), cert. denied, 814 So.2d 988 (Ala.2001), out of the car without violating the Fourth Amendment. See, State v. Abner, 889 So.2d 52, 58-54 (Ala.Crim.App.2004) (recognizing the applicability of Mimms and Wilson in Alabama).
“When a police officer properly stops a vehicle for a traffic violation, the police officer may not only order the driver out of the vehicle, but may also pat down the driver for weapons if the officer reasonably believes that the driver is armed and dangerous. Mimms, 434 U.S. at 112. In Arizona v. Johnson, — U.S. —, 129 S.Ct. 781 (2009), the United States Supreme Court explained:
“ ‘[I]n a traffic-stop setting, the first Terry condition — a lawful investigatory stop — is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a pat-down of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.’
“— U.S. at -, 129 S.Ct. at 784 (emphasis added). See also B.A.H. v. State, 28 So.3d 29 (Ala.Crim.App.2009) (recognizing the applicability of Arizona v. Johnson in Alabama).
“In the instant case, the officers observed Taylor’s vehicle park in front of a house known for drug activity in a high-crime area and witnessed someone approach the house and return to the car *1251 at approximately 5:00 a.m. The officers then witnessed Taylor commit a traffic offense by driving without his headlights on and initiated a traffic stop. During the traffic stop, Taylor told Officer But-terbrodt that he did not have his driver’s license or any form of identification on his person. Officer Butterbrodt testified that Taylor could not identify himself, and that he deemed it necessary to conduct a patdown search because it was his belief as a police officer that Taylor was consciously trying to hide his identity and possibly other evidence of criminal activity that might put the two officers in danger. See generally Tuohy v. State, 776 So.2d 896, 899-900 (Ala.Crim.App.1999), writ quashed, 776 So.2d 902 (Ala.2000). Furthermore, Officer Page testified that in situations where a motorist cannot produce a driver’s license, proof of identification, or proof of insurance, he will write down the information given to him by the suspect and attempt to verify the information on his computer. If an officer cannot verify the information given to him by the suspect, Officer Page testified that it was police policy to place the suspect in protective custody ‘because, at the moment, we don’t know who they are and what kind of warrants they have.’ (R. 29.)
“Given the totality of the circumstances, Officer Butterbrodt was justified in conducting a patdown search for weapons and seizing the crack pipe found in Taylor’s pocket. The officers observed Taylor in a high-crime area and witnessed someone get out of the car being driven by Taylor and walk up to a house known for its drug activity. This Court has previously held that these factors may give rise to a reasonable suspicion that criminal activity is afoot. See Landrum, 18 So.3d at 428 (witnessing the appellant repeatedly exit his car and approach a nearby house late at night in a high-crime area created sufficient reasonable suspicion for further investigation pursuant to Terry ). Furthermore, Officer Butterbrodt testified that, based on his experience, suspects who say they have no identification may be trying to hide something like weapons, so he felt as if he needed to pat down Taylor in order to make sure he was not armed. Officer Butter-brodt’s inference that Taylor could be armed was reasonable, and this Court must give due weight to ‘ “the specific reasonable inference which [a police officer] is entitled to draw from the facts in light of his experience.” ’ State v. Hails, 814 So.2d at 986, quoting Terry, 392 U.S. at 27. Accordingly, the circuit court abused its discretion when it found that the police lacked sufficient reasonable suspicion to pat down Taylor, and it erred in granting Taylor’s motion to suppress.”
Based on the totality of the circumstances in this case, a reasonably prudent person in McCoy’s circumstances would have been warranted in the belief that her safety or that of others was in danger. In fact, this case highlights the precarious situation law enforcement officers are faced with when they stop unknown individuals in high crime areas, particularly at night. Therefore, we conclude that the trial court erroneously granted Bailey’s motion to suppress. Accordingly, we reverse the trial court’s judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, KELLUM, and MAIN, JJ., concur. WELCH, J., dissents, with opinion.