WINDOM, Judge.
The State of Alabama appeals the Montgomery Circuit Court’s July 6, 2009, order granting Thomas L. McClure’s motion to suppress all evidence obtained during a traffic stop. On April 3, 2009, the Montgomery County grand jury issued an indictment charging McClure with one count of possession of a controlled substance, a violation of 13A-12-212(a)(l), Ala.Code 1975; one count of possession of drug paraphernalia, a violation of § 13A-12-260(c), Ala.Code 1975; and one count of possession of marijuana for other than personal use, a violation of § 13A-12-213(a)(l), Ala. Code 1975.
On April 29, 2009, McClure filed a motion to suppress, in which he argued that the State’s evidence should be suppressed because such evidence was illegally obtained. On July 6, 2009, the circuit court conducted an evidentiary hearing on McClure’s motion to suppress. At the conclusion of that hearing, the circuit court granted McClure’s motion. On July 8, 2009, the State of Alabama timely filed its notice of appeal.
The following facts were established during the suppression hearing. On October 30, 2008, at 10:20 pm., Corporal J.S. Dunn, an officer with the Crime Reduction Team of the Montgomery Police Department, and his partner, Agent B.L. Butler, “paced” McClure driving approximately 70 miles an horn’ in a 45-mile-an-hour construction zone on 1-85 in Montgomery. After determining that McClure was exceeding the speed limit, Corporal Dunn activated his emergency lights. At that point, McClure merged from the left lane into the right lane but did not immediately pull over. Instead, McClure continued to drive for approximately one half of a mile.
After McClure eventually pulled over, Corporal Dunn observed him lean over to the passenger side of the car. In the meantime, Corporal Dunn approached McClure’s car, and McClure rolled the window down only halfway. Even with the window only halfway down, Corporal Dunn detected a “really, really strong” odor of air freshener indicating that McClure “had just sprayed a whole bunch of air freshener.” (R. 8, 9.)
Corporal Dunn also observed that McClure was really nervous. While standing next to McClure’s car, Corporal Dunn informed McClure that he was going to issue McClure a warning ticket for speeding. Corporal Dunn then asked McClure to get out of his car and stand next to Corporal Dunn’s car while he wrote the ticket. Although he had been informed that he would receive only a warning, McClure remained extremely nervous. (R. 10.) Agent Butler testified that during this time, he noticed that McClure was sweating profusely. (R. 75-76.) Corporal Dunn also noticed that while he was awaiting the traffic citation, McClure was nervously moving his legs around and staring at his car, which, according to Corporal Dunn, was an indication that the vehicle contained contraband. (R. 10,13.)
After Corporal Dunn gave McClure his warning citation, McClure did not move; he just stood there. According to Corporal Dunn, McClure was still extremely nervous and appeared to be too afraid to move. (R. 13.) A few seconds later, McClure began apologizing for speeding. (R. 23.) Corporal Dunn then asked McClure if he had any guns, cocaine, or marijuana in his car. McClure responded *172 that he did not, but became more tense and nervous and clinched the citation when Corporal Dunn mentioned marijuana. (R. 14.) According to Corporal Dunn, when asked about marijuana, McClure’s response was different from his responses when asked about guns and cocaine. Noticing McClure’s reaction to his question about marijuana, Corporal Dunn asked McClure for permission to search the car. McClure responded that he was in a hurry, but he never said no. Corporal Dunn asked again if he could search the car, and McClure responded, “Well, I don’t do anything wrong,” but he still did not say no. (R. 16.)
Corporal Dunn then asked McClure “if there was any reason why the [drug] dog would indicate the presence of any narcotics in his vehicle.” (R. 14-15, 16.) At that point, McClure asked Corporal Dunn if he “really had a dog.” (R. 15.) Corporal Dunn then told McClure that “it would be better if [h]e just call[ed] a dog out [t]here.” (R. 16.) As Corporal Dunn was preparing to call a canine unit, McClure stopped him by stating, “[n]o, no, no. Don’t call a dog. Don’t call a dog. You can search.” (R. 16-17.) McClure then informed Corporal Dunn that there was marijuana in the trunk of the car.
After McClure consented to a search and informed Corporal Dunn that marijuana was in the trunk, Corporal Dunn and Agent Butler searched the car. Inside, they found marijuana, an Adderall pill, a ceramic pipe, and $6,400. (R. 18.) McClure was then placed under arrest.
Based upon these facts, the circuit court found that McClure was detained after he had been issued the warning citation for speeding and that Corporal Dunn lacked a reasonable suspicion to detain and question McClure after the citation was issued. (R. 49-60.) Having found that McClure was illegally detained, the circuit court granted his motion to suppress.
On appeal, the State argues that McClure was not detained after the citation was issued, and even if he was, the detention was justified under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[1] The State also asserts that McClure validly consented to a search of his car; therefore, the circuit court erred in granting McClure’s motion to suppress.
Initially, although the State raises arguments relating to the propriety of the search of McClure’s vehicle, the dis-positive issue before this Court is whether McClure was unlawfully detained after he had been issued the warning citation. The circuit court did not question or rule on the legality of the search itself; instead, it ruled that the search was the fruit of an illegal detention. Presumably the circuit court did not rule on the propriety of the search itself because, if the detention was legal, the search was clearly supported by probable cause and arguably supported by consent.[2] Further, the circuit court may *173 not have ruled on the legality of the search itself because the circuit court was aware that, absent an illegal detention, suppression would be inappropriate under the inevitable-discovery doctrine.[3] Accordingly, this Court will address only whether the circuit court erred in determining that McClure was unlawfully detained after the warning citation was issued.
“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).” State v. White, 28 So.3d 827, 829 (Ala.Crim.App.2009) (quoting State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004)). In the instant case, the relevant facts are uncontested; therefore, the only issue before this Court is the circuit court’s application of the law to those facts. Consequently, this Court affords no presumption in favor of the circuit court’s ruling and reviews the circuit court’s decision de novo.
It is well settled that warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the State establishes that the search or seizure falls within a recognized exception. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985). Exceptions to the warrant requirement include: 1) objects in plain view; 2) consensual searches; 3) a search incident to a lawful arrest; 4) hot pursuit or emergency situations; 5) probable cause coupled with exigent circumstances; and 6) an investigatory detention and frisk pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995). Under the Terry exception, “[a] routine traffic stop may be prolonged if police have a ‘reasonable suspicion’ of other criminal activity.” Camp v. State, 983 So.2d 1141, 1145 (Ala.Crim.App.2007).
“In reviewing reasonable suspicion determinations, courts must look at the ‘ “totality of the circumstances” ’ to see whether the detaining officer had a ‘ “particularized and objective basis” ’ for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d *174 621 (1981). ‘This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that “might well elude an untrained person.” ’ Arvizu, 534 U.S. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690).”
Muse v. State, 42 So.3d 789, 791-92 (Ala.Crim.App.2009). In the context of a prolonged traffic stop, “the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,] must be considered.” State v. Washington, 623 So.2d 392, 395-96 (Ala.Crim.App.1993) (emphasis in original) (quoting Arnold v. State, 601 So.2d 145, 149 (Ala.Crim.App.1992)). See also State v. Green, 992 So.2d 82, 88 (Ala.Crim.App.2008) (holding that circumstances known to the officer at the time of the continued detention should be considered).
Assuming without deciding that the traffic stop was prolonged, this Court holds that the following circumstances established a reasonable suspicion of criminal activity that justified the prolonged detention. When Corporal Dunn activated his emergency lights, McClure took “a long time to pull over....” (R. 18.) Once he finally pulled his vehicle over, McClure leaned over into the passenger side of the car. Cf. Ex parte Kelley, 870 So.2d 711, 723 (Ala.2003) (recognizing that a “police officer’s suspicion can legitimately ripen into probable cause where the officer observes furtive gestures after he or she has ordered the individual to stop”). When Corporal Dunn approached the car, McClure rolled the window down only halfway, and Corporal Dunn detected a “really, really strong” odor of air freshener indicating that McClure “had just sprayed a whole bunch of air freshener.” (R. 8, 9.) See United States v. West, 219 F.3d 1171, 1178-79 (10th Cir.2000) (holding that the scent of air freshener is a proper factor in a reasonable-suspicion analysis); Feeney v. State, 208 P.3d 50, 55-56 (Wyo.2009) (holding that the “strong odor” of “dryer sheets” was a factor supporting the officer’s reasonable suspicion that a drug crime was occurring). When initially approached, McClure was extremely nervous and sweating profusely, and his extreme nervousness did not subside during the encounter or after the warning citation was issued. See Camp, 983 So.2d at 1145 (recognizing that extreme nervousness is a “pertinent factor” in determining when reasonable suspicion justified a prolonged traffic stop). Additionally, while Corporal Dunn was writing the warning citation, McClure stared at his car, which Corporal Dunn testified was, based on his experience, an indicator that contraband was in the car. (R. 10-11.) Finally, after McClure was given the citation, he just stood there as if frozen with fear.
Based on the totality of the circumstances, McClure’s behavior created a reasonable suspicion that he was committing a crime and justified the prolonged traffic stop. Therefore, the circuit court erred in finding that the prolonged stop rendered the search of the car illegal and in granting McClure’s motion to suppress.
For the foregoing reasons, the circuit court’s order is reversed, and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, and MAIN, JJ., concur. WISE, P.J., recuses herself.

. The legality of the initial stop is not at issue on appeal.

. Before the search of the car, McClure admitted to Corporal Dunn that there was marijuana in the trunk. (R. 17.) McClure’s admission that there was marijuana in the trunk of the car provided probable cause justifying a search of the car under the automobile exception to the warrant requirement. See State v. Black, 987 So.2d 1177, 1180 (Ala.Crim.App.2006) (citing Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (holding that under the "automobile execution,” a vehicle may be searched without a warrant based on probable cause alone); Adams v. State, 815 So.2d 578, 580 (Ala.2001) (considering an admission by a codefendant in holding that probable cause justified the search of a car); United States v. Are, 590 F.3d 499, 507 (7th Cir.2009) (holding that the defendant’s admission that contraband was in his bedroom constituted probable cause for the issuance of a warrant); *173 People v. Brown, 24 A.D.3d 884, 886, 806 N.Y.S.2d 262, 264 (2005) (holding that the “defendant's admission of the presence of a crack pipe in the car provided probable cause for the entry into and search of the car for the pipe under the automobile exception to the warrant requirement”).

. In order for illegally obtained "evidence to qualify for admission under [the inevitable-discovery exception] to the [Fourth Amendment] exclusionary rule, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct.” Jefferson v. Fountain, 382 F.3d 1286, 1296 (11th Cir.2004). Here, Corporal Dunn testified that he was in the process of calling a canine unit to perform a sniff test of the car when McClure stopped him, consented to the search, and admitted that there was marijuana in the trunk. (R. 15-17.) If the detention at that point was legal and no exception to the warrant requirement applied, there is a reasonable probability that the drug evidence would have been detected by the canine unit, thus providing probable cause for the search of the car. Accordingly, under the inevitable-discovery doctrine, any illegality in the search itself would not have rendered the evidence inadmissible. Cf. West v. State, 53 So.3d 990, 994 (Ala.Crim.App.2010) (holding that law enforcement had probable cause to search the vehicle based on the canine’s indication that narcotics were present in the vehicle); State v. Montgomery, 968 So.2d 543, 552 (Ala.Crim.App.2006) ("[A]n alert by a trained drug-sniffing dog provides probable cause to search without a warrant.”).