WINDOM, Presiding Judge.
The State of Alabama appeals the circuit court's order suppressing evidence of cocaine discovered in Tommy Williams's pocket during a traffic stop. For the reasons that follow, this Court reverses the circuit court's order and remands the cause for further proceedings.
On February 21, 2013, Cpl. A.T. Caffey of the Montgomery Police Department stopped Williams's automobile because Williams failed to signal while turning. During the traffic stop, Cpl. Caffey discovered cocaine in Williams's pocket and arrested him for possession of a controlled substance. On April 8, 2016, a Montgomery County grand jury indicted Williams for unlawful possession of a controlled substance. See § 13A-12-212(a)(1), Ala. Code 1975. On May 10, 2016, Williams filed a motion to suppress the cocaine that formed the basis of his indictment. In his motion, Williams did "not challenge that his traffic stop was properly initiated due to his turning without signaling, and thus d[id] not suggest the Officer's action was not justified at its inception other than the fact that there [was] no ... ticket ... issued to Williams." (C. 30.) "Rather, Williams maintain[ed] that all evidence seized as a result of the ... events, and any and all statements and derivative evidence flowing therefrom, should be suppressed because they are the result of a search and seizure of Williams' person that violated his Fourth Amendment rights." (C. 30.) Specifically, Williams argued that the officer lacked any grounds to order him out of his *530 automobile; therefore, any evidence obtained after he was ordered out of the automobile should be suppressed.
On June 1, 2016, the circuit court held a suppression hearing during which the State presented testimony from one witness, Cpl. Caffey. Cpl. Caffey testified that on February 21, 2013, he witnessed Williams "turning off of the boulevard onto Carmichael Road" without signaling. Cpl. Caffey activated his emergency lights to pull Williams over for turning without signaling. See § 32-5A-133, Ala. Code 1975. When Cpl. Caffey activated his lights, Williams pulled his automobile into the parking lot of a Waffle House restaurant.
Cpl. Caffey and his partner approached Williams's vehicle. As they approached, they saw that "[Williams] was moving sporadically. He wasn't just sitting still. He wasn't moving as if he was going for a wallet. He kept moving to the right side of his body." (R. 5.) When asked the difference between a driver reaching for his wallet and Williams's behavior, Cpl. Caffey testified:
"It's a big difference. Most people, they would just do a single motion to grab a wallet. At the time [Williams] kept reaching down to his right side and then he would sit up. Then he would reach to his right side again while watching me in the mirror approach the vehicle."
(R. 5.)
When Cpl. Caffey reached Williams's automobile, he asked Williams for his driver's license, tag receipt, and proof of insurance. Williams provided his driver's license and tag receipt but did not have insurance. Because of Williams's behavior and because he was acting nervously, Cpl. Caffey instructed him to get out of the automobile. Williams, however, refused and "started playing with some paper." (R. 7.) Cpl. Caffey again instructed Williams to get out of the automobile, and Williams again refused and "started putting his hand in and out of his right-front side pocket." (R. 7.) At that point, Cpl. Caffey
"grabbed his left hand and ... instructed him to stop putting his hand in his pocket [and to put his right hand out of the window]. [Cpl. Caffey again] instructed him to step out of the vehicle .... So [Williams] complied after [Cpl. Caffey] grabbed his hand. [Cpl. Caffey] opened the door, and [Williams] stepped out."
(R. 7.) Cpl. Caffey testified:
"Once he stepped out of the vehicle, I conducted a pat-down immediately. I started on the right side of his body since that was where he was grabbing, where he was reaching. Once I started on his pants, I came up to his right-side pocket. I felt a bulge, and the first word out of his mouth was it's cocaine."
(R. 8.) Cpl. Caffey testified that he patted down Williams for weapons because of Williams's erratic movements and persistence in putting his hand in his pocket.
During the hearing, defense counsel explained:
"I just want to note that once he's out of the car is not really the issue. It's-and like you said, whether or not he was able to get him out of the car in the first place is the issue. So all of the stuff about the pat-down is not where we're arguing the Fourth Amendment is violated. Asking him to get out at all is where it lies."
(R. 8-9.) Defense counsel then elicited testimony indicating that Cpl. Caffey did not issue Williams any traffic citations.
At the conclusion of the hearing, the State argued:
"By [defense counsel's] own admission, the only thing they are challenging is whether or not he was able to get out of *531 the car. The case that I provided to you, State v. Taylor, 46 So.3d 504 (Ala. Crim. App. 2010) ], that is actually a case from this courtroom where a suppression motion was granted and was appealed and reversed. It says-and I quote this Court has recognized that a traffic stop is more analogous to the brief investigative detention authorized by Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ]. So long as the police officer has properly seized the occupants of the car, being the traffic stop. Judge, the officer may order the driver or a passenger out of the car without violating the Fourth Amendment."
(R. 20.)
Defense counsel then stated that she was also challenging the initial stop as pretextual. Specifically, defense counsel argued that the initial stop was pretextual because the officer did not issue any traffic citations.
After the hearing, Williams filed a supplemental motion to suppress in which he argued that the stop was pretextual, that Cpl. Caffey lacked a basis to order Williams out of the automobile, and that Cpl. Caffey lacked any justification for the pat-down search. The State filed a response refuting Williams's assertions. Thereafter, the circuit court granted Williams's motion to suppress.
On appeal, the State argues that the circuit court erred by granting Williams's motion to suppress. According to the State, Cpl. Caffey's actions complied with the Fourth Amendment and the decisions of the Supreme Court of the United States applying that amendment. Thus, the circuit court's decision must be reversed. This Court agrees.
Initially, this Court notes:
" ' "When evidence is presented ore tenus to the trial court, the court's findings of fact based on that evidence are presumed to be correct," Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994) ; "[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence," Bradley v. State, 494 So.2d 750, 761 (Ala. Crim. App. 1985), aff'd, 494 So.2d 772 (Ala. 1986) ; and we make " 'all the reasonable inferences and credibility choices supportive of the decision of the trial court.' " Kennedy v. State, 640 So.2d 22, 26 (Ala. Crim. App. 1993), quoting Bradley, 494 So.2d at 761. "[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court .... Absent a gross abuse of discretion, a trial court's resolution of [such] conflict[s] should not be reversed on appeal." Sheely v. State, 629 So.2d 23, 29 (Ala. Crim. App. 1993) (citations omitted). However, " '[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts.' " State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala. 1980). " ' "[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment." ' " Ex parte Jackson, 886 So.2d 155, 159 (Ala. 2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala. 1995). A trial court's ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala. Crim. App. 2000).' "
*532 C.B.D. v. State, 90 So.3d 227, 237 (Ala. Crim. App. 2011) (quoting State v. Hargett, 935 So.2d 1200, 1203-04 (Ala. Crim. App. 2005) ). "Because only the arresting officer[ ] testified at [Williams's] suppression hearing, and the evidence was ... undisputed, the decision of the trial court should be reviewed de novo." Worthy v. State, 91 So.3d 762, 765 (Ala. Crim. App. 2011) (citing State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996) ).
Further, it is well settled that warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the State establishes that the search or seizure falls within a recognized exception. Ex parte Hilley, 484 So.2d 485, 488 (Ala. 1985). Exceptions to the warrant requirement include: 1) objects in plain view; 2) consensual searches; 3) a search incident to a lawful arrest; 4) hot pursuit or emergency situations; 5) probable cause coupled with exigent circumstances; and 6) an investigatory detention and search for weapons pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Ex parte Tucker, 667 So.2d 1339, 1343 (Ala. 1995). Another recognized exception to the warrant requirement is the "automobile exception," which allows law enforcement to search an automobile based on probable cause alone. State v. Black, 987 So.2d 1177, 1180 (Ala. Crim. App. 2006) (citing Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) ).
In State v. Perry, 66 So.3d 291 (Ala. Crim. App. 2010), this Court explained:
"that a traffic stop is ' " 'more analogous' to the brief investigative detention authorized in Terry [v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968) ]" 'than custody traditionally associated with a felony arrest. Sides v. State, 574 So.2d 856, 858 (Ala. Crim. App. 1990), quoting Pittman v. State, 541 So.2d 583, 585 (Ala. Crim. App. 1989), quoting in turn Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed. 2d 317 (1984). In stopping a vehicle for a traffic violation, a police officer has, in Fourth Amendment terms, seized the driver, Cains v. State, 555 So.2d 290, 292 (Ala. Crim. App. 1989), quoting Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed. 2d 660 (1979). 'Under Terry [v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968) ], law-enforcement officers may stop a vehicle for investigatory purposes based on a traffic violation. State v. Rodgers, 903 So.2d 176, 178 (Ala. Crim. App. 2004).' J.T.C. v. State, 990 So.2d 444, 447 (Ala. Crim. App. 2008)."
66 So.3d at 294.
" 'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' " Brown v. State, 821 So.2d 219, 223 (Ala. Crim. App. 2000) (quoting Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citations omitted)). Thus, if a law-enforcement officer conducting a traffic stop has probable cause to believe that a traffic violation occurred, " 'the officer's subjective intent in [stopping the vehicle] is irrelevant.' " State v. Jemison, 66 So.3d 832, 839 (Ala. Crim. App. 2010) (quoting Ex parte Scarbrough, 621 So.2d 1006, 1010 (Ala. 1993) ). See Whren, 517 U.S. at 813, 116 S.Ct. 1769 (rejecting the argument that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); J.D.I. v. State, 77 So.3d 610, 619 (Ala. Crim. App. 2011) (" ' "[T]he rule articulated by the Supreme Court in Whren [v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ] provides law enforcement officers broad leeway to conduct *533 searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions." ' " (quoting United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003), quoting in turn United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) )). Further, "[s]o long as the police officer has properly seized the occupants of the car, the officer may order the driver, Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), or a passenger, State v. Hails, 814 So.2d 980 (Ala. Crim. App. 2000) (recognizing Maryland v. Wilson, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ), cert. denied, 814 So.2d 988 (Ala. 2001), out of the car without violating the Fourth Amendment." State v. Taylor, 46 So.3d 504, 508 (Ala. Crim. App. 2010) (citing State v. Abner, 889 So.2d 52, 53-54 (Ala. Crim. App. 2004) ); State v. Bailey, 49 So.3d 1245, 1250 (Ala. Crim. App. 2010) (same); see also Mimms, 434 U.S. at 111, 98 S.Ct. 330 (holding that when law-enforcement officers have legally stopped the driver of a vehicle, they may, consistent with the Fourth Amendment, order a driver out of the car for any reason or for no reason); State v. Moore, 115 So.3d 187, 191 (Ala. Crim. App. 2012) (same).
After a driver has been ordered out of an automobile, " ' "[p]olice may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed." ' " B.A.H. v. State, 28 So.3d 29, 32 (Ala. Crim. App. 2009) (quoting State v. Hails, 814 So.2d 980 (Ala. Crim. App. 2000), quoting in turn United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998), citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ). Thus, " Terry permits a police officer to conduct a patdown search of a suspect's outer clothing to 'discover guns, knives, clubs or other hidden instruments [which may be used] for the assault of the police officer.' " Ex parte James, 797 So.2d 413, 418 (Ala. 2000) (quoting Terry, 392 U.S. at 29, 88 S.Ct. 1868 ). If probable cause to believe a suspect has contraband develops during the Terry pat-down, the officer may search beneath the outer clothing and seize the contraband. See Nix v. State, 136 So.3d 1101, 1104 (Ala. Crim. App. 2013). A suspect's admission to possessing contraband is sufficient to establish probable cause to search. See State v. McClure, 53 So.3d 169, 173 n. 2 (Ala. Crim. App. 2010) ("McClure's admission that there was marijuana in the trunk of the car provided probable cause justifying a search of the car under the automobile exception to the warrant requirement."); Adams v. State, 815 So.2d 578, 580 (Ala. 2001) (considering an admission by a codefendant in holding that probable cause justified the search of a car); United States v. Are, 590 F.3d 499, 507 (7th Cir. 2009) (holding that the defendant's admission that contraband was in his bedroom constituted probable cause for the issuance of a warrant); People v. Brown, 24 A.D.3d 884, 886, 806 N.Y.S.2d 262, 264 (2005) (holding that the "defendant's admission of the presence of a crack pipe in the car provided probable cause for the entry into and search of the car for the pipe under the automobile exception to the warrant requirement").
Williams conceded to the circuit court that Cpl. Caffey had probable cause to pull him over for failing to use his turn signal.[1] See *534 § 32-5A-133(a), Ala. Code 1975. As Cpl. Caffey approached Williams's automobile, he saw that Williams was watching him and was moving toward his right side. When Cpl. Caffey reached Williams, he noticed that Williams was nervous. At that point, Cpl. Caffey lawfully ordered Williams to exit the automobile. See Moore, 115 So.3d at 191 (" 'So long as the police officer has properly seized the occupants of the car, the officer may order the driver, Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), or a passenger, State v. Hails, 814 So.2d 980 (Ala. Crim. App. 2000) (recognizing Maryland v. Wilson, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ), cert. denied, 814 So.2d 988 (Ala. 2001), out of the car without violating the Fourth Amendment.' " (quoting Bailey, 49 So.3d at 1250 ). Williams, however, refused Cpl. Caffey's lawful order and, instead, tried to access his right-front-pants pocket, i.e., he kept "putting his hand in and out of his right-front side pocket." (R. 7.) At that point, Cpl. Caffey,
"[g]rabbed his left hand and ... instructed him to stop putting his hand in his pocket [and to put his right hand out of the window]. [Cpl. Caffey again] instructed him to step out of the vehicle .... So [Williams] complied after [Cpl. Caffey] grabbed his hand. [Cpl. Caffey] opened the door, and [Williams] stepped out."
Williams's nervousness, odd movements, refusal to exit the automobile, and repeated attempts to access his pants pocket provided Cpl. Caffey reasonable suspicion that Williams was involved in criminal activity and was armed. See (R. 8-9) ("I just want to note that once he's out of the car is not really the issue. It's-and like you said, whether or not he was able to get him out of the car in the first place is the issue. So all of the stuff about the pat-down is not where we're arguing the Fourth Amended is violated. Asking him to get out at all is where it lies."). While patting down Williams, Cpl. Caffey felt a bulge in Williams's right front pocket. At that point, Williams stated that the bulge was cocaine. With Williams's admission, Cpl. Caffey had probable cause to seize the cocaine. See McClure, 53 So.3d at 173 n.2.
*535 There is no basis in law or facts in the record that supports the circuit court's decision to suppress the cocaine evidence seized from Williams's pocket. Accordingly, the circuit court's order suppressing the evidence is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
Welch, Kellum, Burke, and Joiner, JJ., concur.

On appeal, Williams argues that he "did not concede that the stop was valid, either at the hearing o[r] in pleadings, and argues that the facts in the record support a finding that the stop was not lawful." (Williams's brief, at 7-8.) Williams's representation on appeal cannot be reconciled with the record. In his motion to suppress, Williams declared that he "does not challenge that his traffic stop was properly initiated due to his turning without signaling, and thus does not suggest the Officer's action was not justified at its inception." (C. 30.) During the hearing, Williams's counsel explained to the court that he was challenging only whether Cpl. Caffey had the authority to order Williams to exit the automobile. (R. 8-9.) Thereafter, at the conclusion of the hearing, counsel asserted that the stop was pretextual but never argued that Cpl. Caffey lacked the legal authority to stop Williams for failing to use his turn signal. Williams's appellate counsel also argues that Cpl. Caffey lacked probable cause to stop him because no turn signal was required. According to Williams, he was in the turn lane when he turned without signaling. He then argues, without citing any authority, that turn signals are not required when turning from a turn lane; therefore, Cpl. Caffey lacked a valid reason to stop Williams. Contrary to Williams's assertion, "[n]o person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal." § 32-5A-133(a), Ala. Code 1975. Section 32-5A-133(a), Ala. Code 1975, does not provide an exception to signaling when the driver uses a lane designated for turning. See Commentary to § 32-5A-133, Ala. Code 1975, ("Subsection (a) is intended to simplify the previous provision found in former Section 32-5-58(b) and also to apply both at intersections and elsewhere."); See also United States v. One 1993 Ford F150 Pickup, 148 F.Supp.2d 1258, 1262 (M.D. Ala. 2001) (recognizing that § 13A-5A-133, Ala. Code 1975, does not provide "a different standard for vehicles in a 'turn-only' lane").